[No. A059580. First Dist., Div. Three. Sept. 28, 1993.]

ARA LIVING CENTERS - PACIFIC, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
DENNIS M. DAY, Individually and as Special Administrator, etc., Real
Party in Interest.

### COUNSEL

Nancy E. Hudgins, Rebecca R. Paul and Kathleen D. Fong for Petitioners.

No appearance for Respondent

Houck & Balisok, Russell S. Balisok, Mark B. Buehler, O'Donnell, Prieston & Cahill and John M. Cahill for Real Party in Interest

### OPINION

**WHITE, P. J.**—This action is against operators of a skilled nursing facility, seeking damages for elder abuse. It alleges conduct occurring after the Legislature defined elder abuse and made it a crime under some circumstances, but before it amended the statutes to provide attorney fees for persons bringing civil actions and to allow heirs to recover damages for the pain and suffering of deceased patients. (Welf. & Inst. Code, § 15657.)[1] The issue presented here is whether to apply these changes to events taking place before amendment to the statute. We conclude the attorney fees subsection applies, but that the lifting of the limitation on pain and suffering damages may be applied prospectively only. We direct issuance of a peremptory writ of mandate.

Dennis M. Day is the special administrator of the estate of Hazel Evelyn Ervasti, who died at age 80. In his capacity as administrator, Day filed a civil complaint against ARA Living Centers - Pacific, Inc. (ARA) and others, alleging that Ervasti died from infected bedsores, attributed to neglect while in the care of the defendants at the College Park Convalescent Hospital (Hospital) between August 1 and November 20, 1990. The original complaint, filed before the 1991 amendments to the elder abuse statutes, alleged causes of action for wrongful death, negligence, battery, fraud, and negligent and intentional infliction of emotional distress.

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

After the Legislature's 1991 amendments to the elder abuse laws, Day twice amended the complaint to allege defendants' actions came within provisions of the new law, which provides for attorney fees, punitive damages and survival of actions seeking damages for pain and suffering.

After each amendment to the complaint, ARA and Hospital (referred to as ARA for convenience) moved to strike and demurred to allegations dependent upon the 1991 amendments to the elder abuse law, contending the new provisions could not be applied to events occurring before January 1, 1992, the effective date of the amendments. After briefing and hearings, the court overruled the demurrers in pertinent part, granted the motions to strike Day's allegations of punitive damages (and a surplus prayer in one of the amended complaints) and denied both motions to strike in all other respects. ARA challenges the court's rulings.

We denied ARA's petition, but the California Supreme Court granted review and retransferred the matter with directions to reconsider it in light of *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*) and *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434].

### The Elder Abuse Statutes

In 1982, the Legislature recognized "that dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect such persons." (Former § 15600, added by Stats. 1982, ch. 1184, § 3, p. 4223.) It adopted measures designed to (1) encourage health care providers to report suspected cases of abuse, (2) collect information about abuse, and (3) protect persons who report cases of abuse. (§ 15601 et seq.)

Legislation in 1985 (Stats. 1985, ch. 1164, §§ 1-16, pp. 3916-3927) reenacted the elder abuse statutes, adding greater detail to their provisions. It expanded the definition of abuse to include "physical abuse, sexual abuse, neglect, intimidation, cruel punishment, fiduciary abuse, or other treatment with resulting physical harm or pain or mental suffering, or the deprivation by a care custodian of goods or services which are necessary to avoid physical harm or mental suffering." (Stats. 1985, ch. 1164, § 3, p. 3918.) This amendment called for adoption of guidelines for investigation of abuse by local law enforcement agencies. It specifically defined physical abuse as assault and battery, as defined in various penal laws and including unreasonable physical constraint, or prolonged or continual deprivation of food or water and provided several examples of neglect and of fiduciary abuse. (*Ibid.*)

The Legislature made various other changes in the law in intervening years before making the 1991 amendments. (Stats. 1986, ch. 769, §§ 3-20, pp. 2533-2549; Stats. 1986, ch. 1374, § 1.5, pp. 4912-4915; Stats. 1987, ch. 56, § 189, pp. 241-244; Stats. 1989, ch. 681, § 1, pp. 2245-2248; Stats. 1990, ch. 241, §§ 1-2, pp. 1199-1202.) In 1986 it adopted Penal Code section 368, which made it a crime (felony or misdemeanor depending upon circumstances) to knowingly and willfully cause or permit unjustifiable physical pain or mental suffering upon an elder or dependent adult.

In the 1991 amendments involved here, the Legislature declared that "infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." (§ 15600, subd. (h), added by Stats. 1991, ch. 774, § 2.) It stated the legislative intent to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (*Id.*, subd. (j))

Section 15657, the section in issue here, is probably the most significant provision of the 1991 amendments. It provides: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse . . . neglect . . . or fiduciary abuse . . . and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs. The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. [¶] (b) The limitations imposed by subdivision (c) of Section 573 of the Probate Code on the damages recoverable [for pain and suffering] shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code [which limits noneconomic damages against health care providers to $250,000]. [¶] (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

*Retroactivity*

*Evangelatos, supra,* 44 Cal.3d 1188, one of the two decisions to which the California Supreme Court's transfer order redirected our attention, ruled that

tort reform initiative Proposition 51 could not apply retroactively because nothing in the initiative stated such an intent. Before so ruling, however, the court considered a threshold contention, raised by amici curiae, that application of Proposition 51 to causes of action which accrued prior to its effective date but which did not come to trial until after such effective date would constitute only a prospective, not a retroactive, application of the measure. *Evangelatos* rejected that contention because the governing cases showed that application of a "tort reform statute" to causes of action arising prior to their effective dates would constitute retroactive application of the statute. (44 Cal.3d at p. 1206.)

The statutes in issue here, amendments to the elder abuse statutes, do not make a "substantial change in this state's traditional tort doctrine," as was the case in *Evangelatos*. (44 Cal.3d at p. 1200.) Accordingly, *Evangelatos* does not dictate the result here. We consider anew whether application of the amendments in pending trials for earlier accrued causes of action constitutes a retroactive application.

*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388 [182 P.2d 159], described by *Evangelatos* as "perhaps the leading modern California decision on the subject" (44 Cal.3d at p. 1205), stated the applicable principles: "*Davis & McMillan* v. *Industrial Acc. Com., supra* [198 Cal. 631] at page 638, contains language, quoted from 36 Cyclopedia of Law, page 1201, to the effect that the presumption against retrospective construction does not apply to statutes relating merely to remedies and modes of procedure. (See, also, Crawford, The Construction of Statutes, p. 581.) A different theory is offered to reach the same result in *Morris* v. *Pacific Electric Ry. Co.*, 2 Cal.2d 764, 768 [43 P.2d 276], wherein this court stated that procedural changes 'operate on existing causes of action and defenses, and it is a misnomer to designate them as having retrospective effect.' [Citations.] In other words, procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively. [¶] This reasoning, however, assumes a clear-cut distinction between purely 'procedural' and purely 'substantive' legislation. In truth, the distinction relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on

existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. [Citations.]" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 394.)

Any doubt about the effect *Evangelatos* has had on the foregoing principles was dispelled in *Tapia* v. *Superior Court, supra,* 53 Cal.3d 282 when the California Supreme Court rejected the contention that no part of Proposition 115, the "Crime Victims Justice Reform Act," could apply to prosecutions for crimes committed before its effective date. Because Proposition 115 was silent on the question of retrospectivity, *Tapia* ruled that much of it was prospective only. (53 Cal.3d at p. 287.) However, the court also identified those parts of the initiative which addressed the conduct of trials and were without substantive effect within the meaning of *Aetna Cas. Tapia* ruled they could be applied in trials for crimes committed before the initiative's effective date. (53 Cal.3d at pp. 297-300.) It reconfirmed the "general rule that statutes addressing the conduct of trials are prospective." (*Id.,* at pp. 290-291.)

### Attorney Fees

Numerous appellate decisions implicitly or explicitly treat attorney fee statutes as addressing the conduct of trials and apply them to trials for causes of action accruing before the statutes became effective. (See *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 930-932 [154 Cal.Rptr. 503, 593 P.2d 200], and cases cited therein; *Wood* v. *McGovern* (1985) 167 Cal.App.3d 772, 775 [213 Cal.Rptr. 498]; *Bank of Idaho* v. *Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 11-13 [186 Cal.Rptr. 695]; *Kievlan* v. *Dahlberg Electronics Inc.* (1978) 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585]; *Olson* v. *Hickman* (1972) 25 Cal.App.3d 920, 922 [102 Cal.Rptr. 248]; *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 593-597 [97 Cal.Rptr. 30]; *Record* v. *Indemnity Ins. Co.* (1951) 103 Cal.App.2d 434, 440-444 [229 P.2d 851].) These authorities support the superior court's failure here to strike Day's request for attorney fees. The court's ruling about retroactivity of pain and suffering damages presents more difficult questions.

### Survival of Pain and Suffering Damages

California, by both decisional law and statute, provided for survival of personal injury causes of action long before Probate Code section 573 was changed to its most recent form. (3 Witkin, Cal. Procedure (3d ed. 1985)

Actions, §§ 538-540, pp. 565-567; Stats. 1949, ch. 1380, § 5, p. 2402.) In 1961, the Legislature for the first time placed limits on survival of those causes of action: ". . . [¶] When a person having a cause of action dies before judgment, the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, *and shall not include damages for pain, suffering or disfigurement. . . .*" (Stats. 1961, ch. 657, § 1, pp. 1867-1868, italics added.) The Legislature continued in substance this limitation in 1992 when it reenacted this part of Probate Code section 573 as Code of Civil Procedure section 377.34. (Stats. 1992, ch. 178, § 20.)

The effect of the 1991 amendment to the elder abuse law was to remove this limitation and permit a decedent's personal representative or successor to recover pain and suffering damages when plaintiff can prove by clear and convincing evidence recklessness, oppression, fraud, or malice in the commission of elder abuse. Even then, those damages would be subject to the $250,000 cap placed by Civil Code section 3333.2, subdivision (b) for noneconomic damages against a health care provider. In this limited circumstance, the decedent's right to pain and suffering damages would not die with him or her; the damages would be recoverable by a survivor.

█ The issue of retroactivity of this amendment presents a question not yet decided by published authorities. We consider whether the Legislature (1) has merely affected a change in the conduct of trials, which should routinely apply to this trial, or (2) has changed the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 291.) If the latter is the case, we must consider also whether the Legislature intended retroactive application and, if so, whether it could properly make it retroactive.

ARA contends applying the new statute would be a retroactive application of law because it created a cause of action for elder abuse. ARA cites legislative materials referring to a "cause of action," and notes the superior court here described it as a new cause of action.

We disagree with that characterization. The amendment did not add a cause of action. Elder abuse was first defined by the 1982 act. (Stats. 1982, ch. 1184, § 3, p. 4223.) Provisions of the 1985 legislation expanded the definition. (Stats. 1985, ch. 1120, § 7, pp. 3766-3767 and ch. 1164, § 3, pp. 3917-3920.) The amendment in 1991 demonstrates the Legislature's belief

civil cases could have been brought under then-existing law; in 1991 it only made changes designed to encourage persons to bring such actions. The 1991 amendment did not even increase the measure of damages for elder abuse. It only partially removed a limitation which would otherwise have barred a survivor from recovering the damages on the decedent's behalf.

Although we find the amendment fell short of creating a cause of action, we reject Day's contention that the amendment prescribed only procedures for trials. Day cites various other statutes and administrative regulations which he says impose a preexisting duty on ARA not to commit neglect. He suggests that in light of these duties, ARA should have expected adverse consequences from its neglect or abuse and cannot avoid the consequences of these changes in the elder abuse law.

Day's analysis misses the point, which is not whether ARA had notice there might be consequences from neglect or abuse, but whether a change in the consequences was merely a change in the conduct of trial. We conclude the amendment did considerably more than change the conduct of trial. Because of the amendment, damages up to $250,000 may be assessed against a defendant for pain and suffering if circumstances warrant. Although this was also true before the amendment, it was true only if the abused elder survived; before the amendment the right to pain and suffering damages would die with the elder. We agree with ARA that applying this change to events taking place before the amendment is a retroactive application. (Cf. *Winfree* v. *Nor. Pac. Ry. Co.* (1913) 227 U.S. 296, 302 [57 L.Ed. 518, 520, 33 S.Ct. 273].) As we will explain, we find insufficient evidence the Legislature intended retroactive application.

### Legislative Intent

*Evangelatos, supra,* 44 Cal.3d at page 1209 restated the stringent requirement "that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (Italics added.) *Tapia* v. *Superior Court, supra,* 53 Cal.3d at page 287 retreated only slightly from *Evangelatos'* strong statement, admitting that a "clear indication" from the electorate or Legislature might suffice.

We strongly suspect that, if asked a question about retroactive application, the Legislature would have said the change should apply to past abuse. However, we also suspect the Legislature never considered whether to make the amendment retroactive. We find no clear indication of retroactive intent. The Legislature pointed out that few civil actions were being brought in

connection with elder abuse due in part to lack of incentives. It then provided some incentives. However, it said nothing to indicate an intent *both* to improve incentives for bringing actions based on future abuse *and* to vindicate past abuse. In light of this silence, the presumption of prospective intent prevails.

The court erred in ruling that subdivision (b) of section 15657 could be applied retrospectively to events occurring before the statute's effective date.

Let a peremptory writ of mandate issue directing the San Mateo County Superior Court to vacate its decision on the motion to strike and demurrer to the fourth amended complaint and reconsider its ruling in light of the views expressed herein.

Chin, J., and Werdegar, J., concurred.

A petition for a rehearing was denied October 15, 1993.