945 P.2d 1283

In the Matter of the GUARDIAN-SHIP/CONSERVATORSHIP OF Frances Louise DENTON, An Incapacitated and Protected Adult.

Fred C. DENTON, both individually and in his capacity as guardian and conservator of Frances Louise Denton, Petitioner,

v.

SUPERIOR COURT of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Pamela J. Franks, a judge thereof, Respondent Judge,

AMERICAN FAMILY CARE CORPORATION, an Arizona corporation, dba Paradise Homes # 4; Olsten Certified Healthcare Corp., a Delaware corporation, dba Olsten Kimberly QualityCare; and Todd Koceja and Jane Doe Koceja, husband and wife; Real Parties in Interest.

No. CV–96–0542–PR.

Supreme Court of Arizona,
En Banc.

Sept. 25, 1997.

OPINION

MOELLER, Justice.

### FACTS AND PROCEDURAL HISTORY

At the age of seventy-four, Frances Louise Denton ("Frances") suffered from a multitude of ailments, including coronary heart disease, congestive heart failure, pericardial effusion, mitral and aortic regurgitation, progressive Alzheimer's-type senile dementia, allergies, incoherence, hallucinations, and incontinence. As Frances' condition worsened, her husband, Fred C. Denton ("Fred"), became unable to care for her, and on August 8, 1993, she was admitted to Paradise Homes # 4 (the "Home"), a licensed adult care home. American Family Care Corporation owned the Home, which held itself out as "Specializing in Long Term Alzheimer's Care" and as "Arizona's leader in Alzheimer's Care."

During her six weeks at the Home, Frances developed several serious conditions allegedly resulting from abusive and negligent treatment by the Home's employees. She fell four or five times; suffered from dehydration, malnutrition, and lanoxin toxicity; and endured a stage four decubitus ulcer, otherwise known as a bed sore. The extent of this sore was so great that surgeons had to use a 20 × 30 centimeter skin graft to cover the exposed bone of her coccyx. After she recuperated, Frances was released from the hospital and transferred to Life Care Center of Paradise Valley. She resided there until her death on November 16, 1995.

During Frances' lifetime, Fred filed a complaint against American Family Care Corporation and others ("defendants"). The complaint contained three counts: negligence, breach of contract, and a statutory cause of action under Arizona's elder abuse statute, A.R.S. § 46–455(B) (1989). Frances died while the complaint was pending, and defendants moved for partial judgment on the pleadings on the claim for damages for pain and suffering. Fred did not contest defendants' assertion that the claim for pain and

A. Paul Blunt, P.C. by Jay M. Polk, A. Paul Blunt, Scottsdale, for Petitioner.

Broening, Oberg, Woods, Wilson & Cass by Douglas G. Shook, James R. Broening, Phoenix, for Real Party in Interest American Family Care Corporation.

Mitten, Goodwin & Raup by Stephen C. Yost, Phoenix, for Real Parties in Interest Olsten Certified Healthcare Corp. and Todd and Jane Doe Koceja.

Arnold and Laskin, P.C. by Charles L. Arnold, Wendy Schwartz Laskin, Bridget O. Swartz, Phoenix, for Amicus Curiae Mental Health and Elder Law Section—and—Probate and Trust Section of the State Bar of Arizona Arizona Chapter of National Academy of Elder Law Attorneys.

Arthur N. Gorman, Phoenix, and Dorothy Siemon, Washington, DC, for Amicus Curiae American Association of Retired Persons.

suffering did not survive on the negligence and contract claims. However, he argued that the claim for pain and suffering did survive under the statutory cause of action for elder abuse. The trial court granted defendants' motion. Fred then filed a petition for special action in the court of appeals, which declined to accept jurisdiction. Fred filed a petition for review, which we granted.

## ISSUE

Whether a representative of a victim of elder abuse may recover damages for the victim's pain and suffering pursuant to the elder abuse statute, A.R.S. § 46–455, notwithstanding the death of the victim.

## JURISDICTION

■ Ordinarily we do not accept special action jurisdiction to review the propriety of a pretrial ruling granting partial judgment. *See Munroe v. Galati,* 189 Ariz. 113, 115, 938 P.2d 1114, 1116 (1997). We generally prefer to wait until after final judgment because an interlocutory appeal "often frustrates the expeditious resolution of claims, unnecessarily increases both appellate court caseload and interference with trial judges, harasses litigants with prolonged and costly appeals, and provides piecemeal review." *City of Phoenix v. Yarnell,* 184 Ariz. 310, 315, 909 P.2d 377, 382 (1995). In exceptional circumstances, however, this court will accept special action jurisdiction to review pretrial partial judgments. *See Munroe,* 189 Ariz. at 115, 938 P.2d at 1116; *Bledsoe v. Goodfarb,* 170 Ariz. 256, 258, 823 P.2d 1264, 1266 (1991).

■ We believe the nature of the present case merits our acceptance of special action jurisdiction prior to final judgment. The elder abuse statute is relatively new, and the issue presented is one of first impression in

Arizona. *See Sanchez v. Coxon,* 175 Ariz. 93, 94, 854 P.2d 126, 127 (1993) (holding that special action jurisdiction is appropriate for issues of first impression before this court). Trial courts are unclear as to how to decide this issue, which has resulted in contrary rulings in courts in the same county.[1] The issue in this case is of statewide significance, affecting not just the parties involved, but all incapacitated and vulnerable adults and all adult care homes in our state. *See Bledsoe,* 170 Ariz. at 258, 823 P.2d at 1266. Further, the issue presented here is purely a question of law. *See Cardon v. Cotton Lane Holdings, Inc.,* 173 Ariz. 203, 210, 841 P.2d 198, 205 (1992) (factor in court's decision to accept special action jurisdiction was that issue was question of law).

The advancing age of petitioner and others similarly situated also militates in favor of a speedy remedy. Finally, in many elder abuse actions, the claim for pain and suffering will often be the most significant element of damages. Persons bringing such cases usually will not have claims for lost earnings or diminution of earning capacity. Their medical and other special damages will usually be covered by Medicare or other insurance. As a result, an elder abuse case that proceeds to trial without damages available for pain and suffering will often be senseless and futile. In this case, reasonably prompt justice can be satisfactorily obtained only through special action relief. *See Cardon,* 173 Ariz. at 210, 841 P.2d at 205. Accordingly, we granted review and have jurisdiction pursuant to Arizona Constitution article VI, section 5(3) and Arizona Rules of Procedure for Special Action 8(b).

## DISCUSSION

Fred contends that the elder abuse statute, A.R.S. § 46–455, expressly provides to

---

1. In the present case, Maricopa County Superior Court Judge Pamela J. Franks *granted* defendants' motion for partial judgment on the pleadings, holding that the survival statute precludes Fred Denton from recovering pain and suffering after Frances' death. Minute Entry, April 26, 1996, at 12. In a similar case, Maricopa County Superior Court Judge Robert L. Gottsfield *denied* defendant's motion for partial summary judgment, holding that the survival statute does not apply to claims arising under the elder abuse statute. Minute Entry, August 28, 1995, at 3 (*Severnak v. State,* CV 93–22892).

victims of elder abuse and their representatives the right to recover damages for pain and suffering, even after the death of the abused victim. In support, Fred cites the wording of the statute, legislative intent, principles of statutory construction, and other states' similar statutes. . In contrast, defendants contend that the survival statute, A.R.S. § 14–3110 (1974) (formerly A.R.S. § 14–477), explicitly precludes victims of elder abuse and their representatives from recovering damages for pain and suffering after the death of the abused victim. Like Fred, defendants rely on the wording of the statutes, legislative intent, and principles of statutory construction to support their position. We agree with Fred's reading of the statutes.

■■■ Our ultimate goal in statutory interpretation is to discern the intent of the legislature. *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). To accomplish this, we look first to the statute's words. *Mail Boxes v. Industrial Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995).

In 1988, the legislature enacted A.R.S. § 46–455 which criminalized abuse of an incapacitated or vulnerable adult. The legislature clearly perceived elder abuse as a very serious problem, justifying legislative intervention and designated elder abuse a class 5 felony. The next year, the legislature expanded the elder abuse statute by creating a statutory civil cause of action for elder abuse. The legislature thereby distinguished civil actions for elder abuse from other personal injury actions and created a statutory civil cause of action for elder abuse. 1989 Ariz. Sess. Laws, ch. 118, § 1. This statutory cause of action is set forth in subsection B of A.R.S. § 46–455:

B. An incapacitated or vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such incapacitated or vulnerable adult for having caused or permitted such conduct. .

A.R.S. § 46–455(B).

■■■ We believe the plain wording of A.R.S. § 46–455 allows the trial court to award damages for pain and suffering. If the trial court finds liability under this statute, it may order the tortfeasor to pay "actual and consequential damages, as well as punitive damages, costs of suit and reasonable attorney fees, to those persons injured by the conduct described in this section." A.R.S. § 46–455(F)(4). Actual damages are synonymous with compensatory damages. 25 C.J.S. *Damages* § 2, at 615 (1966); *Arizona Copper Co., Ltd. v. Burciaga*, 20 Ariz. 85, 94–95, 177 P. 29, 32–33 (1918), *overruled in part on other grounds, Consolidated Ariz. Smelting Co. v. Egich*, 22 Ariz. 543, 199 P. 132 (1920). Compensatory damages include damages for pain and suffering. *Myers v. Rollette*, 103 Ariz. 225, 231, 439 P.2d 497, 503 (1968). Thus, actual damages include damages for pain and suffering, and the elder abuse statute affirmatively permits the trial judge to award such damages.

Defendants contend, however, that pain and suffering damages awarded after the victim's death are not compensatory because the person whom the damages would compensate is unable to receive the benefit of the compensation. In support, defendants point out that A.R.S. § 46–455(F)(4) permits the trial court to order damages paid "to those **persons injured** by the conduct described in this section." (Emphasis added.) However, subsection F is merely a nonexclusive list of orders the trial court may issue.[2] The statute does not purport to prohibit a court from

---

2. A.R.S. § 46–455(F) provides:
 F. After a determination of liability such orders may include, but are not limited to:
 1. Ordering any person to divest himself of any direct or indirect interest in any enterprise.

2. Imposing reasonable restrictions, including permanent injunctions, on the future activities or investments of any person including prohibiting any person from engaging in the same type of endeavor or conduct to the extent permit-

ordering damages to be paid to the representatives of the injured victims, whether or not the victim is deceased.

Defendants further argue that because damages for pain and suffering paid after the victim's death are non-compensatory, they are, in effect, quasi-punitive. Thus, according to Defendants, damages for pain and suffering contravene subsection M of A.R.S. § 46–455, which provides that "[a] civil action authorized by this section **is remedial and not punitive.**" (Emphasis added.) Defendants fail to note, however, that subsection (F)(4) expressly allows trial courts to award punitive damages. A.R.S. § 46–455(F)(4). In any event, as previously discussed, pain and suffering damages are compensatory, not punitive.

Defendants' primary contention is that the survival statute prevents recovery of pain and suffering damages after the death of the victim. The survival statute provides:

> Every cause of action ... shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that **upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.**

A.R.S. § 14–3110 (emphasis added).

The legislature amended the elder abuse statute in 1989. Laws 1989, ch. 118, § 3. In so doing, the legislature included two subsections which we believe resolve all doubt as to whether pain and suffering damages survive the death of a victim of elder abuse. The subsections provide in pertinent part:

> **M.** A civil action authorized by this section ... is not limited by any other ... provision of law. Civil remedies provided

under this title are supplemental and not mutually exclusive.

. . .

> **O.** The cause of action or the right to bring a cause of action pursuant to subsection B or C of this section *shall not be limited or affected by the death of the incapacitated or vulnerable adult.*

A.R.S. §§ 46–455(M) and (O) (emphasis added).

We can conceive of no reason for the legislature to include these two subsections, particularly subsection (O), other than to exclude the elder abuse statute from the survival statute's limitations. Application of the survival statute here would contravene the express provision in A.R.S. § 46–455(O) that the cause of action shall not be "limited or affected" by the victim's death.

The legislature's intent and the policy behind the elder abuse statute are clear. Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse. In civil actions for elder abuse, pain and suffering may be the only compensable damages the victim may recover. Because incapacitated or vulnerable adults are not employed, they cannot recover damages for lost earnings or diminished earning capacity. Because incapacitated or vulnerable adults generally have Medicare, Medicaid coverage, or other insurance, they may not recover for medical expenses. Property damage is generally not an issue in elder abuse cases. As a result, the most likely form of damages recoverable in these cases are for pain and suffering. *See generally* Susan J. Hemp, Note, *The Right To A Remedy: When Should an Abused Nursing Home Resident Sue?* 2 Elder L.J. 195, 214 (Fall, 1994).

---

ted by the constitutions of the United States and this state.

3. Ordering dissolution or reorganization of any enterprise.

4. Ordering the payment of actual and consequential damages, as well as punitive damages, costs of suit and reasonable attorney fees, to those persons injured by the conduct described in this section.

5. Ordering the payment of all costs and expenses of the prosecution and investigation of the conduct described in this section, civil and criminal, incurred by the state or county as appropriate to be paid to the general fund of this state or the county which incurred such costs and expenses.

Furthermore, most vulnerable or incapacitated adults are near the end of their lives. Under defendants' theory, the tortfeasor would have a great incentive to delay litigation until the victim dies. If we were to subscribe to defendants' theory, the policy of the elder abuse statute would not be furthered.

Moreover, Arizona is not alone in enacting this type of legislation. In 1991, California passed legislation preserving an elder abuse victim's right to recover pain and suffering damages, despite the victim's death. *See* Cal. Welf. & Inst.Code § 15657(b) (West Supp.1997); *ARA Living Centers—Pacific, Inc. v. Superior Ct.*, 18 Cal.App.4th 1556, 23 Cal.Rptr.2d 224 (App.1993).

■ Because the language of the statute is clear and unambiguous, we need not delve into rules of statutory construction to resolve this case. *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). We do note, however, that when there is conflict between two statutes, "the more recent, specific statute governs over the older, more general statute." *Lemons v. Superior Ct. of Gila County,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984). The elder abuse statute covers a limited class (incapacitated or vulnerable adults) and limited causes of action (abuse, neglect, or exploitation). In contrast, the survival statute applies to all causes of action and all parties injured. Furthermore, the provisions of the elder abuse statute under consideration here were enacted twenty-four years after the survival statute took effect.[3] Thus, under traditional rules of statutory construction, the newer, specific elder abuse statute governs over the older, general survivor statute.

## CONCLUSION AND DISPOSITION

The legislature intended to provide victims of elder abuse or their representatives with the ability to recover damages for pain and suffering even if the victim dies prior to judgment. This intent is evident from the plain words and the underlying policy of the elder abuse statute. We hold that representatives of elder abuse victims may recover damages for pain and suffering endured by the victims, notwithstanding the death of the victims. The partial judgment on the pleadings in favor of defendants is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.

---

3. The survival statute initially was enacted in 1965 as A.R.S. § 14–477. 1965 Ariz. Sess. Laws ch. 88, § 1. In 1973, the statute was renumbered without change as A.R.S. § 14–3110. 1973 Ariz. Sess. Laws ch. 75, § 17. The basic elder abuse statute was enacted in 1988. Extensive additions to the basic statute, including subsections (M) and (O), were enacted in 1989. 1989 Ariz. Sess. Laws ch. 118, § 30.