IN THE SUPREME COURT OF THE STATE OF ARIZONA
En Banc

| | | |
|---|---|---|
| THE ESTATE OF NORMA McGILL on behalf of NORMA McGILL, deceased; and on behalf of WILLIAM N. McGILL and JOHN W. McGILL, surviving children, | ) ) ) ) | Arizona Supreme Court No. CV-02-0058-PR |
| Petitioners, | ) ) ) | Court of Appeals Division One No. 1 CA-SA 02-0006 |
| v. | ) ) | Maricopa County Superior Court |
| HON. REBECCA A. ALBRECHT, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of Maricopa, | ) ) ) ) | No. CV 99-20030 |
| Respondent Judge, | ) ) | |
| MARK ALLEN MANOR; JAMES L. BEACH, D.O. and JANE DOE BEACH, husband and wife; COMCARE, an Arizona corporation; MI L. TRAN, M.D. and JANE DOE TRAN, | ) ) ) ) ) | **O P I N I O N** |
| Real Parties in Interest. | ) ) | |

Special Action from the Superior Court in Maricopa County
The Honorable Rebecca A. Albrecht, Judge
RELIEF GRANTED

Karen L. Lugosi, P.C.                                                                           Phoenix
        By:    Karen L. Lugosi
               James A. Frisbie
Attorneys for Petitioners

Law Offices of Neil Vincent Wake                                                      Phoenix
        By:    Neil Vincent Wake
               Linda D. Skon
        - and -
Sanders & Parks, P.C.                                                                      Phoenix
        By:    Winn L. Sammons
               James C. Goodwin
Attorneys for Real Parties in Interest
James L. Beach, D.O. and Jane Doe Beach

Renaud Cook & Drury, P.A.                                                              Phoenix
        By:    William W. Drury, Jr.
               Carolyn G. Armer
Attorneys for Real Party in Interest
ComCare

Mariscal Weeks McIntyre & Friedlander, P.A.                                    Phoenix
       By:    Timothy J. Thomason
              Maxine M. Polomski
Attorneys for Real Parties in Interest
Mi L. Tran, M.D. and Jane Doe Tran

Cavanagh Law Firm                                                            Phoenix
       By:    Christopher Robbins
Attorneys for Amicus Curiae Association of
American Physicians and Surgeons

Snell & Wilmer, L.L.P.                                                       Phoenix
       By:    Daniel J. McAuliffe
              Barry D. Halpern
              Bhavi A. Shah
Attorneys for Amici Curiae
Arizona Medical Association and Maricopa
County Medical Society

---

FELDMAN, Justice

¶1         We granted review to determine whether a person may maintain a damage action under the Adult Protective Services Act (APSA), A.R.S. § 46-455 *et seq.*, for injuries caused by negligent medical care provided to a vulnerable or incapacitated adult. Examining the interplay between APSA and the Medical Malpractice Act (MMA), A.R.S. § 12-561 *et seq.*, we conclude that under some circumstances such an action may be maintained.

## FACTS

¶2         Norma McGill died on November 7, 1997, at age sixty-four. The cause of her death, as listed on her death certificate, was cardiac arrest due to neurotoxicity secondary to medications and breast cancer metastasis.[1]

---

[1] The parties do not agree on the cause of death, there evidently being some difference between the expert testimony and the death certificate. Of course, the matter having been decided on summary judgment, at this stage we must view the facts in the light most favorable to the party opposing the motion for summary judgment. Rule 56, Ariz.R.Civ.P.; *Orme School v. Reeves*, 166 Ariz. 301, 308, 802 P.2d 1000, 1007 (1990).

2

¶3    Ms. McGill had a long history of psychiatric illness and had been placed in behavioral health facilities, under the care and treatment of various providers, for about thirty years. In 1993, ComCare, a company providing behavioral and mental health services, assigned a case manager to coordinate Ms. McGill's care needs, together with a psychiatrist and a nurse to monitor her medications and related needs. From October 1994 until April 1997, Doctor Tran, a psychiatrist employed by ComCare, assumed responsibility for monitoring Ms. McGill's medication and care and assessing her psychiatric condition. From September 1994 until March 1997, Doctor Beach was Ms. McGill's primary care physician; he continued in that capacity during the time when ComCare was responsible for Ms. McGill's psychiatric care.[2]

¶4    After Ms. McGill's death, her estate, on behalf of Ms. McGill and her surviving children (collectively Plaintiffs), brought an action against Doctor Beach, ComCare, and Doctor Tran (collectively Defendants), alleging their negligence, neglect, and abuse of Ms. McGill entitled Plaintiffs to recover under both APSA and MMA. Defendants moved to dismiss the APSA claim on the grounds that acts of medical negligence could not form the basis for an APSA action. Judge Hotham, the trial judge, ruled that an action based on negligence could be maintained under either or both acts. Defendants subsequently moved for summary judgment, alleging that under the facts of the case, Plaintiffs' theories were necessarily based on Defendants' acts of medical malpractice, thus precluding an APSA action. By that time, the case had been transferred to Judge Albrecht, who ruled that Plaintiffs' APSA claim was based on Defendants' malpractice in caring for Ms. McGill and that something more than malpractice must be shown to establish an APSA claim. Accordingly, Judge Albrecht dismissed the APSA claim, leaving the medical malpractice claims for jury trial. Plaintiffs brought a direct special action in this court, seeking relief from that order. We declined jurisdiction, referring the matter to the court of appeals. Rule 7, Ariz.R.P.Spec.Act. After the court of appeals declined jurisdiction, Plaintiffs sought review

---

[2] Plaintiffs claim that ComCare was also responsible for Ms. McGill's general health care. Doctor Beach seems to take that position also. *See* letter from James L. Beach, D.O., dated Aug. 5, 1997. We leave this issue to the trial court on remand.

by this court. Rule 8(b), Ariz.R.P.Spec.Act. The issue is one of first impression and statewide importance. We granted review, thus accepting jurisdiction of the special action proceeding. We do not usually review pretrial rulings granting partial summary judgment but do so in the present case for the reasons described in our prior opinion dealing with APSA, *Denton v. Superior Court*, 190 Ariz. 152, 154, 945 P.2d 1283, 1285 (1997). The reasons given in *Denton* for taking jurisdiction still apply. *Id.*

## DISCUSSION

### A.    The Adult Protective Services Act

¶5    Adopted in 1989, the civil version of APSA was intended to create a statutory civil cause of action. *Id.* The legislature created this cause of action with the following words:

> An incapacitated or vulnerable adult whose life or health is being or has been endangered or injured by *neglect*, *abuse* or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, [or] that has assumed a legal duty to provide care . . . .

A.R.S. § 46-455(B) (emphasis added). Incapacitated adults include those suffering from

> an impairment by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, [or] advanced age . . . to the extent that the person lacks sufficient understanding or capacity to make or communicate informed decisions concerning his [or her] person.

A.R.S. § 46-451(A)(5). Vulnerable adults are those over eighteen years who are "unable to protect [themselves] from abuse, neglect or exploitation by others because of a physical or mental impairment." A.R.S. § 46-451(A)(10). Ms. McGill, of course, fits either definition, and APSA clearly covers her.[3]

¶6    We have previously alluded to legislative purpose with respect to protection of the elderly: "Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse." *Denton*, 190 Ariz. at 156, 945 P.2d at 1287. We continue to believe it clear from the text

---

[3] For the balance of this opinion, our use of the term "incapacitated" includes the statutory definition of both incapacitated and vulnerable adults.

of the statute, the conditions prevalent in this state, and the sparse legislative history[4] that the statute was intended to increase the remedies available to and for elderly people who had been harmed by their caregivers. *Id.*

**¶7**      The statute creates a civil cause of action for an incapacitated or vulnerable adult who has been "injured by neglect, abuse or exploitation . . . ." A.R.S. § 46-455(B). The definitions, however, create some degree of ambiguity because, while the action may be maintained for either neglect or abuse, abuse includes injury caused by negligent acts or omissions. A.R.S. § 46-451(A)(1).[5] Neglect, however, "means a pattern of conduct . . . resulting in deprivation of . . . medication [or] medical services . . . ." A.R.S. § 46-451(A)(7).[6]

## B.    Contentions

**¶8**      The statute's wording has resulted in differing views between the parties in this and, we suspect, many other cases. Plaintiffs contended that acts of negligence, even a single such act by a physician caring for an incapacitated adult, will provide a basis for an APSA action. Defendants disagreed, and the trial judge ruled that "something in addition to medical malpractice" is needed to enable Plaintiffs to maintain a so-called elder abuse action. *See* Minute Order, Oct. 18, 2001.

---

[4] In responding to a question by the senate committee considering the 1991 amendments to APSA's civil cause of action, the Executive Director of the Association for Retarded Citizens testified that the "intention [of the civil remedy provided by APSA] is to protect these [adults], and hopefully the only effect on the relationship between a service provider and a[n incapacitated adult] would be to increase the quality of care and the attention given to the [adult] to avoid liability [of the service provider]." Minutes of Arizona State Committee on Judiciary (chaired by Sen. David Bartlett), hearing on S.B. 1081, Feb. 12, 1991.

[5] A.R.S. § 46-451(A)(1) defines abuse as:

> (a) Intentional infliction of physical harm.
> (b) Injury caused by negligent acts or omissions.
> (c) Unreasonable confinement.
> (d) Sexual abuse or sexual assault.

[6] A.R.S. § 46-451(A)(7) defines neglect as "a pattern of conduct without the person's informed consent resulting in deprivation of food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health."

5

**¶9** Plaintiffs rely on *Denton* in arguing to us that the legislature intended to provide incapacitated adults with the extra protections provided by APSA, including the right of survivors to recover damages for pain and suffering after the death of the protected adult. *See Denton*, 190 Ariz. at 156-57, 945 P.2d at 1287-88. Defendants respond that the legislature meant what it said in A.R.S. § 46-451(A)(1)(b) when it required the plural — acts or omissions — and when, in defining neglect, it referred to a pattern of conduct. A.R.S. § 46-451(A)(7). Thus, a single act of negligence is not actionable under APSA. Further, Defendants argue, the legislature intended MMA to be the exclusive statute governing medical malpractice actions. A.R.S. § 12-561 *et seq.* Thus, an action based on negligence by physicians is governed solely by MMA, which provides a shorter statute of limitations, lacks provisions for survival of damage claims for pain and suffering, and prohibits application of the collateral source rule. *Id*.

## C.    Whether a single act of negligence triggers APSA

**¶10** We turn first to Plaintiffs' suggestion that we must apply A.R.S. § 1-214 and thus construe the plural phrase "negligent acts or omissions" in APSA to include any single negligent act or omission.[7] We do not agree with Plaintiffs' submission that the provisions of A.R.S. § 1-214(B) that a statute's words "in the plural number include the singular" should be applied rigidly and thus determine the resolution of this case.[8] We do not believe rigid application of A.R.S. § 1-214 is appropriate, given

---

[7] A.R.S. § 1-214. Words of tense, number and gender

> A.    Words in the present tense include the future as well as the present.
> B.    Words in the singular number include the plural, and words in the plural number include the singular.
> C.    Words of the masculine gender include the feminine and the neuter.
> D.    Words of the feminine gender include the masculine and the neuter.

[8] In one case in which we were asked to apply the provisions of A.R.S. § 1-214, we rejected the argument that the command of the statutory predecessor of A.R.S. § 1-214(B) that the words "masculine gender include the feminine" be applied so that the statute limiting jury duty to men only would be construed to include women. *McDaniels v. State*, 62 Ariz. 339, 343, 158 P.2d 151, 153 (1945) (incorrectly upholding validity of statute, notwithstanding equal protection provisions of Ariz. Const. art. II and art. VII, § 2, stating that citizens included women, thus providing Arizona women with right of suffrage before U.S. Const. amend. XIX was ratified in 1920).

the statute laying down the general rule requiring us to interpret statutes "liberally" and in such a manner as "to effect their objects and to promote justice." A.R.S. § 1-211(B). Further, we are commanded not to apply the statutory rules of construction when "such construction would be inconsistent with the manifest intent of the legislature." A.R.S. § 1-211(A).

¶11        Our courts have always construed A.R.S. § 1-214 as a permissive statute, permitting us to interpret the singular as the plural and the plural as the singular when such an interpretation will enable us to carry out legislative intent. *See Long v. Napolitano*, ___ Ariz. ____, ____ ¶ 43, 53 P.3d 172, 184 ¶ 43 (App. 2002) (legislature's use of singular "any county" does not require us to apply statute to only one county simply because A.R.S. § 1-214(B) says use of singular includes plural); *In re Ryan A.*, 202 Ariz. 19, 25 ¶ 25, 39 P.3d 543, 549 ¶ 25 (App. 2002) (use of "parent" in statute *may* be construed to mean both parents); *see also State v. Shepler*, 141 Ariz. 43, 44, 684 P.2d 924, 625 (App. 1984) (use of plural includes singular).

¶12        Our court of appeals has held that the provisions of A.R.S. § 1-214 must be applied consistently with those of A.R.S. § 1-211, which require us to effect legislative intent. *Homebuilders Ass'n of Central Arizona v. City of Scottsdale*, 186 Ariz. 642, 649, 925 P.2d 1359, 1366 (1996). As the court of appeals has held, the purpose of the statute "construing plural and singular nouns and verbs interchangeably is to avoid requiring the legislature to use such expressions as 'person or persons,' 'he, she, or they,' and 'himself or themselves.'" *Id.* (citing EARL P. CRAWFORD, THE CONSTRUCTION OF STATUTES 374 (1940)); *see also* 2A NORMAN J. SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 47.34 (6th ed. 2000). We thus interpret A.R.S. § 1-214 as a permissive statute rather than a mandatory injunction of interpretation.

¶13        Finally, rigid application of the rules of construction in A.R.S. § 1-214 would violate the general precepts of statutory construction we have adopted in the past. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (where statute's text is clear and unambiguous, we apply it without resorting to other methods; where there is ambiguity, we interpret by attempting

to determine legislative intent; where we cannot ascertain legislative intent on specific issue, we interpret in manner that furthers perceived goals of relevant body of legislation).

¶14    We do not believe interpreting APSA so as to apply to any and every single act of medical malpractice would be consistent with the legislature's obvious intent to protect a class of mostly elderly or mentally ill citizens from harm caused by those who have undertaken to give them the care they cannot provide for themselves. Consider for a moment the situation of a surgeon who, while operating on a patient, negligently fails to remove an instrument or discover a perforation in the viscera. Such negligence and the resulting injury can afflict anyone, not just the incapacitated, and is completely separate from the unique role of caregiver and incapacitated recipient. Thus, it would fall only within MMA, not APSA.

¶15    But Defendants and amici argue that abuse — negligent acts or omissions — must always involve multiple acts committed over a period of time. Thus, they say, a single act of "simple negligence" can never constitute abuse or neglect under APSA. Brief of American Association of Physicians and Surgeons at 14. Putting aside the difficulty of separating simple from complex negligence, we nevertheless conclude that such an easy solution, appealing as it may be, will not serve the purposes for which APSA was enacted. Consider, for example, the nurse who places an incapacitated person in a bathtub, turns on the water at too high a temperature, and is distracted for a moment. This single and simple act of neglect is directly related to the caregiver's responsibility in caring for the incapacitated patient and is one from which that patient may not be able to protect him or herself.

¶16    We therefore conclude that we can neither automatically limit the negligent act or omission wording of A.R.S. § 46-451(A)(1) to a series of negligent acts nor say that a single act of negligence involving an incapacitated person will never give rise to an APSA action. We hold instead that to be actionable abuse under APSA, the negligent act or acts (1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem or problems that caused the incapacity.

8

**¶17**     We are well aware that this formulation does not provide an easy, bright-line test for judges and juries. But we believe it best serves the purposes of the legislation and addresses the problems the legislature sought to correct.

### D.     Whether remedies provided by APSA and MMA are mutually exclusive

**¶18**     Defendants and amici argue that even a series of acts of medical malpractice cannot provide a basis for an APSA action. Malpractice claims, they say, may be pursued only under the provisions and remedies contained in MMA. This contention fails for several important reasons.

**¶19**     First, we would eviscerate APSA and completely defeat legislative purpose were we to adopt Defendants' argument. According to MMA, a medical malpractice action is not limited to claims against physicians but includes claims against any "licensed health care provider" whose "negligence, misconduct, errors or omissions" caused injury or death. A.R.S. § 12-561(2). A licensed health care provider is defined as any person or entity licensed by the state "to provide health care, medical services, nursing services or other health-related services." A.R.S. § 12-561(1)(a). Thus, if MMA provides an exclusive remedy, all or at least the great majority of caregivers to the incapacitated would be immune from APSA actions and APSA would be a toothless tiger. Further, MMA prohibits medical malpractice actions "based upon assault and battery." A.R.S. § 12-562(B). This directly conflicts with the APSA provisions defining abuse, *inter alia*, as intentionally inflicted harm and sexual abuse or assault. A.R.S. § 46-451(A)(1)(a) and (d). The text is clear, but even if it were not, we must conclude that the legislature could not have intended to immunize a doctor, nurse, or other provider from APSA liability for sexual assault or other intentionally inflicted injury.

**¶20**     Nor does the statute's text permit us to conclude that something more than negligence is required to constitute abuse. What more could that be? Defendants suggest that a "mental state greater than mere lack of due care is required," such as "intent to harm or at least disregard of the likely harm." Supplemental Brief of Defendant Beach at 1. But abuse as a basis for an action is defined as being either intentional harm, negligent harm, unreasonable confinement, or sexual abuse or assault.

9

A.R.S. § 46-451(A)(1) (a) to (d). Thus, the legislature explicitly stated that both intentionally caused harm and negligently caused harm could constitute abuse. Nor could we conclude that the legislature meant to require a showing of gross negligence to sustain a plaintiff's burden of proving abuse. The statute speaks only of negligent acts or omissions. The legislature surely knows how to require a showing of gross negligence, having used that term in a great number of statutes. *See*, *e.g.*, A.R.S. § 33-1551(C)(2) ("Grossly negligent" means a knowing or reckless indifference to the health and safety of others.).

¶21　　　　But we need not rely on logic to conclude that acts of medical negligence can form the basis for an APSA claim. We are required by text to reject Defendants' argument that MMA and APSA civil actions are mutually exclusive. The APSA statute addresses the issue explicitly in these words:

> A civil action authorized by this section is remedial and not punitive and does not limit and is not limited by any other civil remedy or criminal action or any other provision of law. Civil remedies provided under this title are supplemental and not mutually exclusive.

A.R.S. § 46-455(M).

¶22　　　　The text is therefore quite clear: MMA is a civil remedy, and APSA is not limited by any other civil remedy. APSA was enacted subsequent to the 1976 adoption of MMA and, as the text states, provides a supplement to other civil remedies. We thus conclude that when the requirements described in paragraph 19 are met, acts of medical negligence, including a single act in some situations, may provide a basis for an APSA action.

### E.　　Interplay between civil and criminal actions under APSA

¶23　　　　Defendants argue that if an act of medical negligence is encompassed within the scope of the APSA statutes, doctors who have committed nothing more than medical malpractice may be charged with felonies under A.R.S. § 46-455(A), which states that a care provider who "causes or permits the life of the [incapacitated] adult to be endangered or his health to be injured or endangered by *neglect* is guilty of a class 5 felony." (Emphasis added.) Thus, we believe the fears of Defendants and amici

10

are misplaced. Civil actions may be maintained for neglect or abuse. Abuse, but not neglect, includes negligent acts or omissions. *Cf*. A.R.S. § 46-451(A)(1)(b) *and* A.R.S. § 46-451(A)(7). APSA's felony provisions therefore do not apply to cases of abuse but only to neglect cases, which require a pattern of conduct. A.R.S. § 46-451(A)(7). This case, of course, does not involve criminal prosecution under A.R.S. § 46-455(A); nor do the facts require us to determine what may constitute a pattern of conduct sufficient to meet criminal standards.

## F.    Resolution

**¶24**        We turn now to apply our holding to the facts of this case. We note at the outset that the case arose out of a special action challenging Judge Albrecht's ruling granting summary judgment to Defendants on the APSA claim. Thus, we do not have a full record of the facts obtained by the parties in discovery proceedings. Nor were the litigants aware of the standards for an APSA action in preparing for and arguing the summary judgment motions. From the briefs and from the portions of the record provided in the appendices, we can conclude, however, that the claim against Doctor Tran certainly could fall within APSA. Again taking the facts in a light most favorable to Plaintiffs, as we must, it would appear that Doctor Tran was the psychiatrist in charge of treating Ms. McGill for some two and one-half years, ending approximately seven months before her death, and that she was administered Haldol, a psychotropic drug that requires monitoring to guard against the serious side effect of tardive dyskinesia. Plaintiffs claim Ms. McGill might have been treated with other, less dangerous medications, such as Ativan, in conjunction with low doses of Haldol. Thus, Doctor Tran was treating Ms. McGill for the mental problems that caused her incapacity, her injury arose from that course of treatment,[9] and that treatment was intended to address the incapacitating condition. Doctor Tran's alleged negligent acts were therefore part of the service he undertook because of Ms.

---

[9] Given the partial record and the issue accepted for review, we do *not* address the causation issues raised by Defendants with respect to Ms. McGill's death. It would seem, however, that if Doctor Tran's negligent monitoring was a cause of Ms. McGill's contracting tardive dyskinesia, the claim for pain and suffering would survive. *See Denton*, 190 Ariz. at 155, 945 P.2d at 1286.

McGill's incapacity, were closely connected to his relationship as a caregiver to Ms. McGill, and were related to the problems that gave rise to Ms. McGill's incapacity. Given the standards we have laid down for maintaining an APSA action, we believe summary judgment should not have been granted on the APSA claim against Doctor Tran and ComCare, his employer.

¶25 The case against Doctor Beach appears to be weaker. From what we can gather, it seems that Ms. McGill was taken to Doctor Beach's office for a general physical examination on two occasions. The standard of care evidently required that a physician performing a general physical examination of a woman of Ms. McGill's age and condition order a yearly mammogram. Doctor Beach did not do this; in fact, no mammogram was performed until sometime after Ms. McGill last saw Doctor Beach. Plaintiffs claim that Ms. McGill's relatives had requested mammograms and that Doctor Beach did not honor those requests. We will not attempt to solve that riddle on the record before us.[10] On remand, the trial judge has leave to reexamine the matter under the standards we have now articulated and determine whether there is a triable issue of fact concerning the APSA liability of Doctor Beach.

## CONCLUSION

¶26 The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____

STANLEY G. FELDMAN, Justice

---

[10] We do not agree, however, with Doctor Beach's contention that failing to order a mammogram is a single act of negligence even when committed on two occasions.

CONCURRING:


_____
CHARLES E. JONES, Chief Justice


_____
REBECCA WHITE BERCH, Justice


_____
MICHAEL D. RYAN, Justice


_____
JOSEPH W. HOWARD, Judge


The Honorable Ruth V. McGregor recused herself; pursuant to article VI, § 3 of the Arizona Constitution, the Honorable Joseph W. Howard, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in her stead.