[No. E035349. Fourth Dist., Div. Two. Nov. 10, 2005.]

SARABELL SMITH, Plaintiff and Appellant, v.
BEN BENNETT, INC., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

1508

### COUNSEL

Law Offices of Federico Castelan Sayre, Federico C. Sayre, Kent M. Henderson, Juan C. Victoria and Leon C. Summer for Plaintiff and Appellant.

Campbell, Volk & Lauter, John B. Campbell and J. Douglas Caffarel for Defendant and Respondent.

Tuverson, Kramer & DeBoer and Kathleen A. Stosuy for Andrew Philip Corr, M.D., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**RICHLI, J.**—In this case, we must decide whether the statute tolling the limitations period for an action based on a health care provider's "professional negligence" (Code Civ. Proc., § 364, subd. (d); see also *id.*, subd. (a)) applies to a claim against a health care provider for the enhanced remedies available under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (hereafter the Elder Abuse Act or the Act). We will hold that it does not. Accordingly, the trial court properly sustained a demurrer to the plaintiff's elder abuse claims on the ground that they were time-barred.

I

### FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2001, Sarabell Smith (Smith) filed this action against Ben Bennett, Inc., doing business as Community Care and Rehabilitation Center (CCRC),[1] as well as other defendants not parties to this appeal. Smith alleges that on December 31, 1999, her husband, Marvin Smith, then aged 78, was admitted to CCRC, a skilled nursing facility. While there, he was abused, beaten, unlawfully restrained, and denied medical treatment. On January 16, 2000, he was admitted to a hospital, and on January 20, 2000, partly as a result of CCRC's acts and omissions, he died there.

Smith's original complaint asserted causes of action for elder abuse, negligence, and wrongful death. Based on allegations that CCRC had committed elder abuse, it sought damages for pain and suffering and attorney fees pursuant to the Elder Abuse Act. (Welf. & Inst. Code, § 15657, subds. (a), (b); see also Code Civ. Proc., § 377.34.)

CCRC demurred to the complaint on grounds including the statute of limitations. The trial court sustained the demurrer, with leave to amend.

---

[1] It is not entirely clear whether Ben Bennett, Inc., and CCRC are two parties or one. The complaint identified them as Ben Bennett, Inc., doing business as CCRC. Their answer identified them the same way. The "respondents' brief," however, identifies "defendants" as CCRC *and* Ben Bennett, Inc. (Capitalization altered.) We deem the answer to be an admission that CCRC is a "doing business as" of Ben Bennett, Inc. We therefore treat them as a single party and refer to them both as CCRC.

Smith then filed a first amended complaint. It asserted the same causes of action and sought the same damages. It added, however, that on January 18 and 19, 2001, Smith had given notice of intention to sue, and as a result the statute of limitations had been tolled for 90 days, pursuant to Code of Civil Procedure section 364.

Once again CCRC demurred to the complaint on grounds including the statute of limitations, this time arguing that Code of Civil Procedure section 364 did not apply to an elder abuse claim. The trial court sustained the demurrer, with leave to amend.

Accordingly, Smith filed a second amended complaint. It purported to state only causes of action for negligence and wrongful death. However, in connection with those causes of action, it continued to allege that CCRC had committed elder abuse, and it continued to seek damages for pain and suffering and attorney fees pursuant to the Elder Abuse Act. It also continued to allege that on January 18 and 19, 2001, Smith had given notice of intention to sue, and as a result the statute of limitations had been tolled for 90 days.

CCRC demurred to the Elder Abuse Act allegations of the second amended complaint. It argued, among other things, that Smith had pleaded "an elder abuse claim in disguise" and hence that Code of Civil Procedure section 364 did not apply.

The trial court sustained the demurrer. It granted leave to amend but ordered that any amended complaint was not to contain allegations of elder abuse or claims for enhanced remedies under the Elder Abuse Act.

Smith then filed a third amended complaint, to which CCRC filed an answer.

After some further litigation, CCRC filed a motion for summary judgment, on the ground that it had not breached any duty of care.[2] The trial court granted the motion. It therefore entered judgment in favor of CCRC and against Smith.

## II

### THE APPLICATION OF THE MICRA TOLLING
### PROVISION TO AN ELDER ABUSE CLAIM

Smith contends the trial court erred by sustaining CCRC's demurrer to the elder abuse allegations of her second amended complaint.

---

[2] The motion was actually filed by CCRC and two individual defendants. The trial court granted summary judgment in favor of the individual defendants on grounds that they could not be held liable in their individual capacities. Smith does not challenge that ruling.

## A. *The Nature of the Problem.*

█ In 1975, the Legislature enacted the Medical Injury Compensation Reform Act (MICRA). In doing so, it " 'attempted to reduce the cost and increase the efficiency of medical malpractice litigation by revising a number of legal rules applicable to such litigation.' [Citation.]" (*Woods v. Young* (1991) 53 Cal.3d 315, 319–320 [279 Cal.Rptr. 613, 807 P.2d 455], quoting *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 363–364 [204 Cal.Rptr. 671, 683 P.2d 670].) MICRA includes statutes relating to arbitration agreements (Code Civ. Proc., § 1295), contingency fees (Bus. & Prof. Code, § 6146), notice before bringing suit (Code Civ. Proc., § 364), the statute of limitations (Code Civ. Proc., § 340.5), the collateral source rule (Civ. Code, § 3333.1), the recoverability of noneconomic damages (Civ. Code, § 3333.2), and periodic payment of any judgment (Code Civ. Proc., § 667.7). Each of these MICRA statutes states its applicability in terms of the "professional negligence" of a "health care provider." Moreover, each of them defines "professional negligence" as a "negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . . ." (E.g., Code Civ. Proc., § 364, subd. (f)(2).)

In addition, Code of Civil Procedure section 425.13, although enacted after MICRA and therefore not actually part of it, applies "[i]n any action for damages arising out of the professional negligence of a health care provider . . . ." (*Id.*, subd. (a).) It establishes certain procedural hurdles to a claim for punitive damages.

█ The problem is that additional causes of action frequently arise out of the same facts as a medical malpractice cause of action. These may include battery, products liability, premises liability, fraud, breach of contract, and intentional or negligent infliction of emotional distress. Indeed, a plaintiff hoping to evade the restrictions of MICRA may choose to assert *only* seemingly non-MICRA causes of action. Thus, when a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the "professional negligence" of the health care provider so as to trigger MICRA.

The answer is sometimes yes and sometimes no, depending on the particular cause of action and the particular MICRA provision at issue. (*Preferred Risk Mutual Ins. Co. v. Reiswig* (1999) 21 Cal.4th 208, 214–218 [87 Cal.Rptr.2d 187, 980 P.2d 895] [yes]; *Barris v. County of Los Angeles*

(1999) 20 Cal.4th 101, 111–116 [83 Cal.Rptr.2d 145, 972 P.2d 966] [yes]; *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111–117 [32 Cal.Rptr.2d 263, 876 P.2d 1062] [yes]; *Waters v. Bourhis* (1985) 40 Cal.3d 424, 436–439 [220 Cal.Rptr. 666, 709 P.2d 469] [no]; *Hedlund v. Superior Court* (1983) 34 Cal.3d 695, 701–704 [194 Cal.Rptr. 805, 669 P.2d 41] [yes]; see also *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 781–790 [11 Cal.Rptr.3d 222, 86 P.3d 290] [Code Civ. Proc., § 425.13, subd. (a): no]; *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 188–191 [10 Cal.Rptr.2d 208, 832 P.2d 924] [Code Civ. Proc., § 425.13, subd. (a): yes].) The Supreme Court has cautioned repeatedly that "the scope and meaning of the phrases 'arising from professional negligence' and 'based on professional negligence' could vary depending upon the legislative history and 'the purpose underlying each of the individual statutes.' [Citation.]" (*Barris*, at p. 116, quoting *Central Pathology Service Medical Clinic, Inc.*, at p. 192.)

There are no cases dealing with the specific issue before us—whether the MICRA tolling provision, Code of Civil Procedure section 364, subdivision (d), applies to an elder abuse claim. Accordingly, we will begin by discussing the particular statutes involved. Second, we will discuss *Delaney v. Baker* (1999) 20 Cal.4th 23 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*), which, although it did not involve MICRA, did construe a "cause of action . . . based on [a] health care provider's alleged professional negligence," as used in the Elder Abuse Act. (Welf. & Inst. Code, § 15657.2.) Third, we will discuss cases dealing with (1) whether the MICRA tolling provision in particular applies to non-MICRA claims in general, and (2) whether MICRA provisions in general apply to an elder abuse claim in particular. Fourth and finally, we will apply these cases to our specific issue.

### B. *The Applicable Statutes.*

#### 1. *The Standard Limitations Period.*

According to Smith, the applicable statute of limitations is Code of Civil Procedure section 340.5. Because it is part of MICRA, it applies to "an action for injury or death against a health care provider based upon such person's alleged professional negligence . . . ." It prescribes a limitations period of three years from the injury or one year from discovery of the injury, whichever is shorter.

According to CCRC, however, MICRA does not apply to elder abuse claims at all. Thus, the applicable statute of limitations is former Code of

Civil Procedure section 340, subdivision (3). When the complaint was filed, that subdivision applied to "[a]n action . . . for injury to or for the death of one caused by the wrongful act or neglect of another . . . ." It prescribed a limitations period of one year. (Stats. 1982, ch. 517, § 97, p. 2334, amended effective Jan. 1, 2003; see now Code Civ. Proc., § 335.1 [two years].)

We need not decide which statute applies. Smith did not allege, and does not claim, delayed discovery. Accordingly, under either provision, the limitations period was one year. Her wrongful death cause of action accrued when her husband died, on January 20, 2000. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Her "survival" cause of action could have accrued earlier; she alleges, however, that her husband was suffering from dementia, and as a result any cause of action he had was tolled by insanity until he died. (See Code Civ. Proc., § 352, subd. (a).) The complaint was not filed until April 19, 2001. Thus, absent tolling, her elder abuse claims are barred.

### 2. *The Tolling Provision.*

Code of Civil Procedure section 364 has two relevant subdivisions. One, which we will call the notice provision, states: "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." (*Id.*, subd. (a).)

The other, which we will call the tolling provision, states: "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." (Code Civ. Proc., § 364, subd. (d).)

Like every other MICRA provision, Code of Civil Procedure section 364 defines "professional negligence" as a "negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . . ."

Smith allegedly gave defendants notice of intention to sue on January 18 and 19, 2001. If Code of Civil Procedure section 364 applies to her elder abuse claims, then the complaint, filed on April 19, 2001, was timely. (See *Woods v. Young, supra,* 53 Cal.3d at p. 326, fn. 3 [any unused portion of limitations period remains available after the 90 days expire; the day notice is served is not counted].)

### 3. *The Elder Abuse Act.*

The Elder Abuse Act provides that "[w]here it is proven by clear and convincing evidence that a defendant is liable for physical abuse . . . or neglect . . . , and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, . . . in addition to all other remedies otherwise provided by law," (1) the plaintiff can recover attorney fees, and (2) if the elder is deceased, his or her successor can recover damages for the elder's pain and suffering while still alive. (Welf. & Inst. Code, § 15657.)

■ "Physical abuse" includes "[u]nreasonable physical constraint, or prolonged or continual deprivation of food or water." (Welf. & Inst. Code, § 15610.63, subd. (d).) "Neglect," as relevant here, is defined as "[t]he negligent failure of any person having the care or custody of an elder . . . to exercise that degree of care that a reasonable person in a like position would exercise." (Welf. & Inst. Code, § 15610.57, subd. (a)(1).) It includes "[f]ailure to provide medical care for physical and mental health needs" (Welf. & Inst. Code, § 15610.57, subd. (b)(2)), "[f]ailure to protect from health and safety hazards" (Welf. & Inst. Code, § 15610.57, subd. (b)(3)), and "[f]ailure to prevent malnutrition or dehydration" (Welf. & Inst. Code, § 15610.57, subd. (b)(4)).

The Elder Abuse Act also provides, however, that: "Notwithstanding this article, any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of the Code of Civil Procedure, based on the health care provider's alleged professional negligence, shall be governed by those laws which specifically apply to those professional negligence causes of action." (Welf. & Inst. Code, § 15657.2.)

■ Thus, the Elder Abuse Act, like MICRA, refers to a cause of action based on the "professional negligence" of a health care provider. (Welf. & Inst. Code, § 15657.2.) It expressly incorporates MICRA's definition of "health care provider." However, it does not define "professional negligence."

### C. *Delaney.*

*Delaney, supra,* 20 Cal.4th 23, construed "professional negligence" as used in the Elder Abuse Act. There, several health care providers had been held liable for enhanced damages under the Elder Abuse Act, based on a jury finding that their conduct had been reckless. (*Delaney,* at p. 28.) They

argued that all of the claims against them were based on "professional negligence," and therefore they were "exempt from the heightened remedies" of the Act. (*Id.* at p. 31.)

The Supreme Court rejected the view that *any* claim of neglect or physical abuse that is directly related to the professional services of a health care provider is *necessarily* based on professional negligence and therefore not subject to enhanced remedies under the Elder Abuse Act. (*Delaney, supra*, 20 Cal.4th at pp. 30–35.) "The adoption of such a position would produce an anomalous result. It would make the determination as to whether the . . . custodians of an elderly person were subject to [Welfare and Institutions Code] section 15657 turn on the custodian's licensing status: A custodian who allowed an elder or dependent adult in his or her care to be become malnourished would be subject to 15657's heightened remedies only if he or she was *not* a licensed health care professional." (*Id.* at p. 35.)

██ However, it also rejected the view that "a cause of action may be *both* 'based on . . . professional negligence' within the meaning of [Welfare and Institutions Code] section 15657.2 and . . . for 'reckless neglect' within the meaning of [Welfare and Institutions Code] section 15657." (*Delaney, supra*, 20 Cal.4th at p. 29, italics added.) The court of appeals had construed Welfare and Institutions Code section 15657.2 to "require[] . . . that causes of action based on professional negligence be governed by laws that *specifically* apply to professional negligence actions, in particular . . . MICRA," yet allow them to be governed simultaneously by the Elder Abuse Act, and in particular its enhanced remedies. (*Delaney*, at p. 28, fn. omitted.) Likewise, Justice Brown, concurring separately, would have held that, in an action for elder abuse based on a health care provider's professional negligence, section 15657.2 "ensures application" of MICRA, "but does not displace the enhanced remedies of" the Elder Abuse Act. (*Delaney*, at p. 43 (conc. opn. of Brown, J.).) The Supreme Court disagreed. It held instead that "the term 'professional negligence,' at least within the meaning of section 15657.2, [i]s mutually exclusive of the abuse and neglect specified in section 15657." (*Id.* at p. 30.)

The court relied, in the first instance, on "the language of the statutes themselves." (*Delaney, supra*, 20 Cal.4th at p. 31.) It observed: " 'Professional negligence' is one type of negligence, to which general negligence principles apply." (*Ibid.*) However, "in order to obtain the remedies available in [Welfare and Institutions Code] section 15657, a plaintiff must demonstrate by clear and convincing evidence that defendant is guilty of something more

than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct." (*Ibid.*) "Section 15657.2 can therefore be read as making clear that the acts proscribed by section 15657 do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence." (*Id.* at p. 32.)

The court also noted that the Elder Abuse Act "defines neglect as 'the negligent failure of any person having *the care or custody of an elder or a dependent adult* to exercise that degree of care which a reasonable person in a like position would exercise.' " (*Delaney, supra,* 20 Cal.4th at p. 34, quoting former Welf. & Inst. Code, § 15610.57; see now Welf. & Inst. Code, § 15610.57, subd. (a)(1).) Thus, "neglect . . . appears to cover an area of misconduct distinct from 'professional negligence' . . . : neglect . . . refer[s] . . . to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations. . . .

"The difficulty in distinguishing between 'neglect' and 'professional negligence' lies in the fact that some health care institutions, such as nursing homes, perform custodial functions *and* provide professional medical care. . . .

"Section 15657 provides the way out of this ambiguity: if the neglect is 'reckless[],' or done with 'oppression, fraud or malice,' then the action falls within the scope of section 15657 and as such cannot be considered simply 'based on . . . professional negligence' within the meaning of section 15657.2." (*Delaney, supra,* 20 Cal.4th at pp. 34–35.)

The court also relied on legislative history: "[T]he Elder Abuse Act's goal was to provide heightened remedies for . . . 'acts of egregious abuse' against elder and dependent adults [citation], while allowing acts of negligence in the rendition of medical services to elder and dependent adults to be governed by laws specifically applicable to such negligence." (*Delaney, supra,* 20 Cal.4th at p. 35, quoting Sen. 3d reading analysis, Sen. Bill No. 679 (1991–1992 Reg. Sess.) as amended Sept. 10, 1991, p. 2; see also *Delaney,* 20 Cal.4th. at pp. 29–30, 36–37.) "There is no suggestion in that history that the Legislature meant by 'based on professional negligence' to refer to any action 'against health practitioners "in their capacity as practitioners." ' On the contrary, as discussed, the legislative history suggests that nursing homes and other health care providers were among the primary targets of the Elder Abuse Act." (*Id.* at p. 41.)

Finally, it relied on "the differing purposes of MICRA and the Elder Abuse Act. The purpose of the latter is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney, supra,* 20 Cal.4th at p. 33.) Thus, " '[t]he Legislature . . . inten[ded] to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." [Citation.]' [Citation.]" (*Ibid.,* quoting *ARA Living Centers-Pacific, Inc. v. Superior Court* (1993) 18 Cal.App.4th 1556, 1560 [23 Cal.Rptr.2d 224], quoting Welf. & Inst. Code, § 15600, subd. (j).) "MICRA has a different focus. The impetus for MICRA was the rapidly rising costs of medical malpractice insurance in the 1970's." (*Delaney,* at p. 33.)

The court cautioned: "[O]ur interpretation of the phrase 'based on professional negligence' found in the unique statutory scheme of the Elder Abuse Act is not necessarily applicable to other statutes in which that phrase appears. . . . *Specifically, we do not purport to construe the meaning of the same phrase within the context of the MICRA statutes.*" (*Delaney, supra,* 20 Cal.4th at p. 41, italics added.)

### D. *The Application of the MICRA Tolling Provision to Other Non-MICRA Claims.*

*Noble v. Superior Court* (1987) 191 Cal.App.3d 1189 [237 Cal.Rptr. 38] (*Noble*) addressed the application of Code of Civil Procedure section 364, subdivision (d) to a cause of action for battery. There, the plaintiff gave notice pursuant to Code of Civil Procedure section 364, subdivision (a). After the limitations period that would otherwise apply to battery had expired, but before the 90-day notice period had run, she filed a complaint alleging battery, but not alleging medical malpractice. Finally, after the 90 days had expired, she amended her complaint to add a cause of action for medical malpractice. (*Noble,* at p. 1191.)

The court held that Code of Civil Procedure section 364, subdivision (d) tolled the running of the limitations period solely as to the medical malpractice claim and not as to the battery claim. (*Noble, supra,* 191 Cal.App.3d at pp. 1192–1195.) Because "[t]he goal of the Legislature was to reduce the number of medical malpractice actions filed," it concluded that the words "professional negligence," as well as their definition in terms of "a negligent act or omission to act," "were carefully chosen to apply only to causes of action based upon negligence." (*Id.* at p. 1192, italics omitted; see also *id.* at p. 1193.) The plaintiff argued "that her cause of action for battery is merely

an alternative theory based upon the same set of facts as her negligence causes of action." (*Id.* at p. 1193.) The court responded that "there are significant differences between the two theories, including the evidentiary burdens, the availability of punitive damages, and the applicable limitations period . . . ." (*Ibid.*)

Moreover, because MICRA had "specifically reduced the limitations period for [medical malpractice] actions from four to three years," the court found the "contention that [Code of Civil Procedure] section 364, subdivision (d) *expanded* the limitations period for battery . . . inconsistent with the spirit, if not the letter, of MICRA." (*Noble, supra,* 191 Cal.App.3d at p. 1193.) "[T]he Legislature . . . enacted section 364 as a *limited* exception to the statute of limitations for 'professional negligence.' Had the Legislature intended section 364, subdivision (d), to extend to causes of action based upon other theories which the plaintiff might wish to include in the complaint, it could have used language which reflected that intent. It did not." (*Id.* at p. 1194.)

E. *The Application of Other MICRA Provisions to an Elder Abuse Claim.*

■ Although *Delaney* itself did not deal with MICRA, two subsequent cases, citing *Delaney*, have held that a MICRA (or MICRA-related) provision does not apply to an elder abuse claim, even when brought against a health care provider.

First, in *Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th 771, the Supreme Court held that Code of Civil Procedure section 425.13 does not apply to an elder abuse claim. (*Covenant Care, Inc.,* at pp. 783–790.) As we mentioned earlier (see part II.A., *ante*), although Code of Civil Procedure section 425.13 is not part of MICRA, its applicability turns similarly on whether an action "aris[es] out of the professional negligence of a health care provider . . . ." (Code Civ. Proc., § 425.13, subd. (a).)

The court acknowledged that, while "[j]udicial precedent on similar facts may be relevant," legislative intent is key. (*Covenant Care, Inc. v. Superior Court, supra,* 32 Cal.4th at pp. 782–783.) To that end, however, it relied heavily on *"Delaney's* well-documented understanding of the Elder Abuse Act's subject matter and purposes . . . ." (*Id.* at p. 789.) For example, it stated: "[A]s we explained in *Delaney,* 'neglect' . . . covers an area of misconduct distinct from 'professional negligence.' " (*Id.* at p. 783.) "More-over, the legislative history of the Elder Abuse Act 'indicates that those who enacted the statute thought that the term "professional negligence," . . . within

the meaning of [Welfare and Institutions Code] section 15657.2, was mutually exclusive of the abuse and neglect specified in [Welfare and Institutions Code] section 15657' as actionable under the Act. [Citation.]" (*Id.* at p. 785, quoting *Delaney, supra,* 20 Cal.4th at p. 30.)

Most recently, *Benun v. Superior Court* (2004) 123 Cal.App.4th 113 [20 Cal.Rptr.3d 26] held that the MICRA statute of limitations (Code Civ. Proc., § 340.5) does not apply to an elder abuse claim against a health care provider. It explained: ". . . *Delaney* makes clear that a cause of action for custodial elder abuse against a health care provider is a separate and distinct cause of action from one for professional negligence against a health care provider." (*Benun,* at p. 124.) "If the legislative intent was that reckless or willful misconduct by health care providers elevates their exposure from mere negligence liability to the 'heightened remedies' of the act, similarly the more egregious nature of the misconduct would logically move them from the protection of the shorter statute of limitations to the functionally longer limitations statutes applicable to all others who commit custodial elder abuse. [Citation.]" (*Id.* at p. 126.) It found no "suggestion that the Legislature had an implicit intent that [Code of Civil Procedure] section 340.5 was to protect health care providers in any other capacity (particularly the 'elder custodian' capacity) than as health care providers." (*Id.* at p. 125, fn. omitted.)

F. *Discussion.*

 We believe *Delaney* is controlling here. Under *Delaney*, an elder abuse claim involves reckless neglect (or intentional abuse) by the custodian of an elder. Thus, it is simply not encompassed within "professional negligence." Moreover, the legislative history of the Elder Abuse Act, as discussed in *Delaney*, indicates that it was intended to apply to acts of egregious abuse, while leaving acts of professional negligence not involving such egregious abuse to be dealt with under other law. Finally, *Delaney* emphasized that the purposes of the Elder Abuse Act were different from the purposes of MICRA.

Smith argues that *Delaney* is not controlling because it construed "professional negligence" as used in Welfare and Institutions Code section 15657.2, whereas we are called upon to construe "professional negligence" as used in Code of Civil Procedure section 364. We disagree. Although the holding in *Delaney* did not extend to any MICRA provisions, its reasoning applies inescapably to Code of Civil Procedure section 364.

 Moreover, this case involves the meaning of "professional negligence" in *both* statutes. Under *Delaney*, Welfare and Institutions Code section 15657.2 works like a toggle switch. If a claim is a "cause of action . . . based

on . . . professional negligence," then "those laws which specifically apply to . . . professional negligence causes of action" apply, and the Elder Abuse Act does not. If, on the other hand, a claim is *not* a "cause of action . . . based on . . . professional negligence," then the Elder Abuse Act *can* apply (the issue in *Delaney*); moreover, "those laws which specifically apply to . . . professional negligence causes of action" *cannot* (the issue in this case). This is true regardless of whether the claim is based on "professional negligence" within the meaning of such other laws. Moreover, it is true regardless of whether such other laws *would* apply *but for* Welfare and Institutions Code section 15657.2.

Smith also argues that the tolling provision furthers the purposes of the Elder Abuse Act because it gives an elder plaintiff more time to sue. The tolling provision (Code Civ. Proc., § 364, subd. (d)), however, is inseparable from the notice provision (*id.*, subd. (a)). The purpose of the notice provision "is to decrease the number of medical malpractice actions filed by establishing a procedure that encourages the parties to negotiate 'outside the structure and atmosphere of the formal litigation process.' [Citations.]" (*Woods v. Young, supra*, 53 Cal.3d at p. 320.) Absent the tolling provision, however, when the end of the limitations period is less than 90 days away, a plaintiff's attorney could not comply with the notice provision, yet still file the complaint before the limitations period had run. The purpose of the tolling provision is to eliminate this "dilemma." (*Id.* at pp. 320–321.)

If, however, the notice provision does not apply to an elder abuse claim, there is no need for the tolling provision to apply, either. Indeed, adopting Smith's position would set a trap for the unwary: In an action under the Elder Abuse Act, *if and only if the defendant was a health care provider*, the plaintiff would have to give 90 days' notice. Failure to do so would subject the plaintiff's attorney to professional discipline. (Code Civ. Proc., § 365.) This would invoke the *Delaney* court's concern that the applicability of the Elder Abuse Act should not "turn on the custodian's licensing status . . . ." (*Delaney, supra*, 20 Cal.4th at p. 35.)

 *Delaney* recognized that the Elder Abuse Act was intended, in part, " 'to "enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." [Citation.]' [Citation.]" (*Delaney, supra*, 20 Cal.4th at p. 33, quoting *ARA Living Centers-Pacific, Inc. v. Superior Court, supra*, 18 Cal.App.4th at p. 1560, quoting Welf. & Inst. Code, § 15600, subd. (j).) Moreover, the Legislature has declared that, in an action involving elder abuse claims, "confidential settlement agreements are disfavored . . . ." (Code Civ. Proc., § 2017.310, subd. (a).) Because the

notice provision was intended to encourage private and informal resolution of claims, it is at odds with these aspects of the Elder Abuse Act.

Also, as the court noted in *Noble*, MICRA in general shortened the limitations period for medical malpractice actions. (*Noble, supra*, 191 Cal.App.3d at p. 1193.) The tolling provision afforded merely "a *limited* exception" to this overall intent. (*Id.* at p. 1194.)[3] *Noble* concluded that the tolling provision does not extend to *any* other theories arising out of the same facts.

Smith argues that *Noble* is limited to intentional torts; she claims that recklessness is inconsistent with intent but consistent with negligence. (See, e.g., *American Employer's Ins. Co. v. Smith* (1980) 105 Cal.App.3d 94, 99–101 [163 Cal.Rptr. 649]; Rest.2d Torts, § 501.) Under *Delaney*, however, at least for the limited purpose of distinguishing an elder abuse claim from a professional negligence claim, recklessness *is* inconsistent with negligence. Moreover, the court in *Noble* did not rest its decision solely on the distinction between intent and negligence; it also relied on MICRA's pro-defendant nature.

A recent case (decided after the briefs in this case had already been filed) confirms that *Noble* is not limited to intentional torts. In *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914], the Supreme Court held, citing *Noble*, that the plaintiff's medical malpractice claim was timely, because the limitations period had been tolled for 90 days under Code of Civil Procedure section 364, but that a products liability claim filed at the same time would not be. (*Fox*, at p. 809–810, fn. 5.)

Smith's best argument is that the Elder Abuse Act does not create a new cause of action; it simply provides for enhanced remedies in connection with existing causes of action. Accordingly, in her view, it would make no sense to say that her elder abuse claims were time-barred, even though her underlying medical malpractice causes of action were tolled. CCRC, on the other hand, claims *Delaney* held that a cause of action under the Elder Abuse Act is distinct from a professional negligence cause of action—indeed, that the two are mutually exclusive. This is a fair reading of *Delaney*. Nevertheless, because the Elder Abuse Act does not provide for compensatory damages, one is left to wonder on what legal theory a plaintiff who brings an elder abuse claim recovers them.

We are not convinced that a Platonic approach—under which an elder abuse claim must abstractly *be* either a "cause of action" or a plea for

---

[3] Or, to put it more crudely, MICRA in general is pro-defendant, but the tolling provision is pro-plaintiff; hence, the tolling provision should be narrowly construed.

"enhanced remedies"—is fruitful. Under *Delaney*, as under the other Supreme Court cases dealing with the scope of MICRA, the issue is a matter of statutory interpretation. An elder abuse claim could be a "cause of action" for some statutory purposes but not others. For example, in dealing with the statute of limitations, what is controlling is not the *nature* of the cause of action (in the sense of the legal theory), but the *gravamen* of the cause of action. (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153, 1158–1159 [10 Cal.Rptr.3d 582].) One cause of action—e.g., negligent misrepresentation—may be governed by different statutes of limitations, whenever the gravamen of the cause of action is different—e.g., professional negligence rather than fraud. (See *id.* at p. 1155.) Thus, it makes perfect sense to say that Smith's elder abuse allegations altered the gravamen of what would otherwise have been professional negligence causes of action.

Finally, Smith raises a number of practical and policy arguments. She argues that a plaintiff who asserts an elder abuse cause of action against a health care provider is also likely to assert a professional negligence cause of action; hence, the limitations period should be the same for both. She also posits a hypothetical in which the plaintiff is forced to file an elder abuse action before the limitations period expires, followed by a separate professional negligence action after the 90-day tolling period expires.

It is not unusual, however, for a plaintiff to assert several different causes of action, arising out of the same facts, that are subject to different limitations periods. Not every elder abuse action is brought against a health care provider, nor is every medical malpractice action brought by an elder who can allege reckless abuse or neglect. When a plaintiff happens to be able to assert both causes of action alternatively, each should still be subject to the same substantive and procedural rules as if it were asserted separately.

In the hypothetical Smith posits, there would be no need to file two actions; after the 90 days had passed, the plaintiff could simply file an amended or supplemental complaint. Smith purports to be appalled by the notion that, by filing the elder abuse action, the plaintiff could begin taking discovery pertinent to the medical malpractice action before the 90-day notice period has run. The same is true, however, if the plaintiff files an action asserting some other legal theory arising out of the same facts, such as battery or breach of contract, before the 90-day notice period has run.

Smith also argues that an elder abuse claim, unlike other causes of action, poses a unique risk of swallowing up a professional negligence claim and hence of nullifying MICRA. She offers the hypothetical of a surgeon who recklessly "fails to wear his mask into the operating room and then sneezes

into the [elder] patient's body cavity . . . ." She argues that because this constitutes elder abuse, the surgeon would be stripped of all MICRA protections, such as the 90-day notice requirement (Code Civ. Proc., § 364, subd. (a)), the cap on contingency fees (Bus. & Prof. Code, § 6146), the contractual arbitration provision (Code Civ. Proc., § 1295), the $250,000 cap on noneconomic damages (Civ. Code, § 3333.2), and the periodic payment of a judgment (Code Civ. Proc., § 667.7).

We can decide this case without having to address Smith's hypothetical. The applicability of each MICRA provision to legal theories other than medical malpractice must be considered on its own. For example, unlike other MICRA provisions, the contractual arbitration provision *does* apply to other theories arising out of a professional negligence claim. (*Herrera v. Superior Court* (1984) 158 Cal.App.3d 255, 261–262 [204 Cal.Rptr. 553]; see also *Noble, supra,* 191 Cal.App.3d at pp. 1192–1193 [distinguishing *Herrera*].) The only provision before us is the tolling provision of Code of Civil Procedure section 364, subdivision (d). It is not intended to protect health care providers, such as the surgeon in Smith's hypothetical; rather, it exists so that the 90-day notice provision of Code of Civil Procedure section 364, subdivision (a), which *is* intended to protect health care providers, will not operate unfairly.

In any event, we decline to be horrified by the possibility that the sternutatious surgeon could not invoke MICRA. We think it would be a rare surgeon indeed who would not only enter an operating room without a mask, but also sneeze on the patient, without so much as turning away or covering his (or her) face. The Legislature could reasonably view this as egregious conduct.

 In sum, although the issue in *Delaney* was not identical to the issue here, the approach it used points the way for us. We conclude that Code of Civil Procedure section 364 does not apply to elder abuse claims. Accordingly, the trial court properly sustained CCRC's demurrer to Smith's elder abuse claims.

III*

### THE EXCLUSION OF DR. BLUMENKRANTZ's DECLARATION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1507.

## IV

## DISPOSITION

The judgment is affirmed. CCRC is awarded costs on appeal against Smith.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 25, 2006, S139795. Chin, J., did not participate therein.