Filed 1/12/16  Renwick v. Sutter Medical Foundation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| CHERYL ELDER RENWICK, | C077380 |
| Plaintiff and Appellant, | (Super. Ct. No. CVCS130911) |
| v. | |
| SUTTER MEDICAL FOUNDATION et al., | |
| Defendants and Respondents. | |

Plaintiff Cheryl Elder Renwick, the daughter and sole heir of decedent Faye Perry, sued defendants Kaiser, Sutter Medical Foundation, and Eskaton Care Center after her mother died of a pulmonary embolism (blood clot in the lungs).   The theory of Renwick's case was that Kaiser, Eskaton, and Sutter were liable for her mother's death based on elder abuse and wrongful death because they failed to ensure that her mother was provided with the blood thinner, Lovenox, even though she had a history of blood clots and pulmonary embolisms.  Kaiser is no longer part of the lawsuit.  The trial court

1

sustained the demurrers of Eskaton and Sutter and entered judgment in their favor. Renwick appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Renwick alleged the following facts in her lawsuit against Eskaton and Sutter:

On May 5, 2011, the mother fell at her house and injured her ankle and foot. She was first treated at Kaiser Roseville, with whom she had a managed health care plan. After being treated at Kaiser, the mother was transferred to Eskaton the same day. "Kaiser, at all times mentioned herein, was [her mother's] primary care giver" and "referred her to Eskaton Care Center merely for convalescent care." "Kaiser retained the primary duty of care for [the mother] for anything related to the fall, including the risk of pulmonary embolisms, right up to her death on May 28, 2011, from a pulmonary embolism."

Eight days after being transferred to Eskaton, on May 13, 2011, Eskaton faxed a referral regarding the mother to Sutter. The referral consisted of two forms: (1) a discharge and transfer-discharge plan of care; and (2) a resident admission record. "Both forms showed that the [mother] had a diagnosis of pulmonary embolism/infarction and Lovenox ordered," meaning the referral contained a prescription for Lovenox.

On May 16, 2011, the mother was discharged from Eskaton, and she returned home. Renwick "was told that a nurse from Sutter would be coming to the home within two days . . . to take care of [her mother] and administer Lovenox injections." The mother was supposed to receive a Lovenox injection once a day for 14 days after her release back home. When no nurse came to the home, Renwick made daily phone calls to Kaiser, Eskaton, and Sutter to ask when a nurse would come. Sutter told Renwick it was "waiting for authorization from KAISER before making an initial visit."

Sutter had its own admission criteria and policy process that required it to perform the initial assessment within 48 hours of the referral, and if that time frame could not be met, Sutter was required to inform the patient's physician, the referral source, and the

2

patient for approval of the delay. If approval was not obtained, Sutter was required to refer the patient to another agency for services. No "staff" at Sutter did any of this.

At no time did Kaiser, Eskaton, or Sutter tell Renwick of the vital need for her to take her mother to the emergency room or any other facility to receive the life-preserving Lovenox injections.

On May 28, 2011, the mother was rushed to the hospital and died that day of a pulmonary embolism.

The California Department of Health found Sutter violated a state regulation that required Sutter to have established and implemented procedures to handle medical emergencies when Sutter violated its own admission criteria and process policy. (See Cal. Code Regs., tit. 22, § 74721, subd. (c)(1) [home health care providers are required to have in place written policies and procedures that include "[a] plan to handle medical emergencies"].)

Renwick's lawsuit here (originally filed on May 23, 2013) alleged Eskaton and Sutter committed elder abuse and wrongful death (the wrongful death was premised on the same facts as the elder abuse). As to Eskaton, Renwick alleged that her mother was under the care of Eskaton when it recklessly neglected to provide her mother injections of Lovenox knowing there was a high probability of death without them, and Eskaton's failure to make a referral to another agency or advise Renwick how to obtain those injections amounted to abandonment of her mother under Eskaton's continuing duty of care. As to Sutter, Renwick alleged Sutter had care of her mother from the time of the referral on May 13, 2011, based on the regulation and its own policies and procedures. Renwick also alleged she was entitled to punitive damages against Sutter under the statute imposing employer liability upon the acts of an employee if the employer "authorized or ratified the wrongful conduct." (Civ. Code, § 3294, subd. (b); see Welf. & Inst. Code, § 15657, subd. (c).)

3

Eskaton and Sutter demurred to the complaint. The trial court sustained both the demurrers without leave to amend. As to the elder abuse claim against Eskaton, the trial court ruled that Renwick's lawsuit specifically alleged that Sutter had care of her mother during the time she suffered the embolism, and not Eskaton. As to the wrongful death claim against Eskaton, the court sustained the demurrer because it was based on the elder abuse allegations. It denied leave to amend this claim because to the extent Renwick could amend the complaint to allege wrongful death based on professional negligence, such a claim would be barred by the one-year statute of limitations. As to the elder abuse claim against Sutter, the trial court ruled Renwick did not "plead with particularity that an officer, director, or managing agent authorized or ratified Sutter's failure to send a nurse or refer to another facility." As to the wrongful death claim against Sutter, the court ruled that if as alleged in the complaint, Sutter is a licensed health care provider, any claims based on professional negligence were time barred.

The court entered judgment in favor of Eskaton and Sutter, and Renwick now timely appeals.

DISCUSSION

I

*The Trial Court Properly Sustained*

*Eskaton's Demurrer Without Leave To Amend*

The function of a demurrer "is to test the sufficiency of a pleading as a matter of law," and on appeal following an order sustaining a demurrer without leave to amend, "we apply the de novo standard of review." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) We do not assume the truth of contentions or conclusions of fact or law contained in the plaintiff's pleadings. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

4

As is relevant here, the elements of elder abuse include: (1) the defendant "had responsibility for meeting the basic needs of the elder or dependent adult"; (2) the defendant "knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs"; and (3) the defendant "denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain . . . (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness)." (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 406-407.)

Renwick contends the trial court erred in sustaining Eskaton's demurrer with respect to her elder abuse claim because her mother was under the care of Eskaton when it recklessly neglected to provide her mother injections of Lovenox knowing there was a high probability of death without them, and Eskaton's failure to make a referral to another agency or advise Renwick how to obtain those injections amounted to abandonment of the mother under Eskaton's continuing duty of care. As we explain below, Renwick's contention lacks merit for at least four reasons. One, Renwick failed to allege facts showing her mother was in Eskaton's care or custody when injured. Two, Renwick failed to allege facts that Eskaton abandoned her mother. Three, Renwick failed to allege facts showing Eskaton acted recklessly or maliciously. And four, Renwick's claim is really one for professional negligence, for which the one-year statute of limitations had expired.

Since Renwick has stated that her claim of wrongful death is premised on her elder abuse claim, the wrongful death claim fails as well.

A

*The Mother Was Not In Eskaton's Custody Or Care When She Was Injured*

Renwick could not meet the first element of elder abuse, namely, that Eskaton had care or custody of the mother. Specifically, the mother was not in Eskaton's care when

5

the failure to give Lovenox injections occurred. The failure to give the injections occurred between May 16, 2011, and May 28, 2011. But Renwick pled that Eskaton admitted her mother on May 5, 2011, and discharged her on May 16, 2011. Since the injury did not take place until after the mother was discharged from Eskaton, Eskaton cannot be liable based on a care or custody theory.

Moreover, as the trial court observed, Renwick pled facts in her complaint that were inconsistent with the conclusion that Eskaton had responsibility for her mother's outpatient care after Eskaton discharged her. Specifically, Renwick alleged that Sutter was responsible for caring for her mother " 'from the time of her referral to Sutter North on or about May 13, 2011.' " Renwick further alleged that "[d]efendant Kaiser, at all times mentioned herein, was [her mother's] primary care giver" and "referred her to Eskaton Care Center merely for convalescent care." "Kaiser retained the primary duty of care for [the mother] for anything related to the fall, including the risk of pulmonary embolisms, right up to her death on May 28, 2011, from a pulmonary embolism." Where a plaintiff alleges a conclusion and inconsistent special facts from which the conclusion is drawn, the sufficiency of the complaint is determined from the special facts, not from the conclusion. (*Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995.)

Finally, Eskaton owed no continuing duty of care to the mother after it discharged her to ensure her mother received the Lovenox injections or to warn Renwick about harm to her mother if her mother did not get such injections or was not taken to the emergency room if her mother failed to get the injections. One owes no duty to control the conduct of another, nor to warn those endangered by such conduct, unless there is a special relationship. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129.) This rule derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for nonfeasance. (*Ibid.*) Eskaton did not have a special relationship with the mother simply because she was a patient of Eskaton at one point.

6

(See *Katona v. County of Los Angeles* (1985) 172 Cal.App.3d 53, 59 [where a mental health facility had unconditionally discharged the patient and did not continue to treat her, the facility was not responsible for her suicide six weeks later].)

B

*Renwick Has Not Pled Facts Necessary To Establish*

*An Abandonment Theory Of Elder Abuse As To Eskaton*

Renwick contends that regardless of whether she could meet the element of care or custody, she established that Eskaton abandoned her mother, which is sufficient to constitute elder abuse. She has not, however, because Renwick failed to plead facts establishing abandonment. A plaintiff must plead all "essential facts of . . . her case," which are "those upon which liability depends." (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1120.)

"[A]bandonment is defined as 'the unilateral severance by the physician of the professional relationship between himself and the patient without reasonable notice at a time when there is still the necessity of continuing attention." (*James v. Board of Dental Examiners* (1985) 172 Cal.App.3d 1096, 1113.) Here, Renwick failed to allege in her complaint a lack of consent by either herself or her mother regarding her mother's discharge from Eskaton. Thus, she has failed to allege that her mother's discharge from Eskaton was unilateral. She also has failed to allege lack of reasonable notice. To the contrary, Renwick pled that an alternative provider, Sutter, was actually located to care for her mother and that Sutter or Kaiser had responsibility for her medical care during the relevant time frame.

C

*Renwick Has Failed To Alleged Facts Establishing*

*Malicious Or Reckless Conduct As To Eskaton*

Elder abuse requires that the defendant "denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that

7

injury was substantially certain . . . (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness)." (*Carter v. Prime Healthcare Paradise Valley LLC*, *supra*, 198 Cal.App.4th at pp. 406-407.) Thus, " 'a plaintiff must demonstrate . . . that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct.' " (*Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1518-1519.)

Here, the only specific wrongful conduct that Renwick attributed to Eskaton was its failure to tell Renwick over a period of 12 days of the vital need for her to take her mother to the emergency room or any other facility to receive the life-preserving Lovenox injections. This conduct does not rise to the level of malice or recklessness for at least two reasons. One, there was no allegation that Renwick or her mother were unaware of the importance of Lovenox to the mother's health or that if they were indeed unaware, Eskaton was aware of their lack of knowledge. Thus, it cannot be said Eskaton deliberately disregarded a high probability that the mother would be injured. And two, there was no allegation that Eskaton knew about the other factors that prevented the Lovenox injections here, namely, that Kaiser was not approving the referral to Sutter or that Sutter was not going to provide the injections.

In sum, there were no allegations that Eskaton knew that the highly likely consequence of it failing to warn Renwick or her mother of the need for Lovenox would result in her mother's injury, because there were other variables that led to this result and Renwick failed to allege Eskaton knew about and disregarded those factors. Renwick also has not stated she can amend its complaint to make these allegations.

# D

### *The Complaint Cannot Be Amended To State A Claim For Professional Negligence Because The One-Year Statute Of Limitations Has Expired*

"A problem that sometimes arises is when a plaintiff hoping to evade the restrictions of [Medical Injury Compensation Reform Act (MICRA)], will choose to assert intentional torts, 'seemingly non-MICRA causes of action. Thus, when a cause of action is asserted against a health care provider on a legal theory other than medical malpractice, the courts must determine whether it is nevertheless based on the "professional negligence" of the health care provider so as to trigger MICRA.' " (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 353.) MICRA claims based on professional negligence of a health care provider have a more restrictive one-year statute of limitations that runs from when a plaintiff discovered or should have discovered the injury. (Code Civ. Proc., § 340.5.)

Here, MICRA governed Renwick's claims because the claims were for injury were (1) against a health care provider; and (2) based on professional negligence. (Code Civ. Proc., § 340.5, subds. (1), (2).)

As to (1), the complaint alleged that Eskaton was a nursing home facility licensed by the California Department of Public Health. Such "[a] skilled nursing facility is a health care provider for purposes of section 340.5." (*Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 974.)

As to (2), the complaint alleged that the mother was injured because Eskaton failed to tell her or Renwick over a period of 12 days of the vital need for Renwick to take her mother to the emergency room or any other facility to receive the life-preserving Lovenox injections. The definition of professional negligence in the MICRA context is "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that the services are within the scope of services for which the

9

provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Code. Civ. Proc., § 340.5, subd. (2).) A warning about the need for life-saving medication is both medical advice and a determination of the appropriate level of care needed for the patient. (See Cal. Code of Regs., tit. 22, §§ 72301, subd. (a), 72303, subds. (a), (b)(4) [patients at a skilled nursing facility shall be under a doctor's care and be provided physician's services, which includes advice, treatment, and a determination of the appropriate level of care needed].)

As MICRA applied here, Renwick had until approximately May 28, 2012, to file her complaint. That is because her mother died on May 28, 2011, and prior to that, Renwick should have at least suspected her mother's injury was caused by wrongdoing, in that she made daily telephone calls to Kaiser, Sutter, and Eskaton when no nurse showed up at her mother's house. Accordingly, any claim by Renwick based on professional negligence would be time-barred by MICRA's one-year statute of limitations (Code Civ. Proc., § 340.5), as Renwick filed her complaint on May 23, 2013.

II

*The Trial Court Properly Sustained Sutter's Demurrer Without Leave To Amend*

Renwick contends the trial court erred in sustaining Sutter's demurrer with respect to her elder abuse claim and her wrongful death claim (on which her elder abuse claim is based) because Sutter had a duty of care for her mother, imposed under statute, its own procedures and the facts here, as soon as it received the referral from Eskaton. The trial court ruled Renwick did not "plead with particularity that an officer, director, or managing agent authorized or ratified Sutter's failure to send a nurse or refer to another facility."

As we explain, the trial court was correct in sustaining the demurrer without leave to amend for at least three reasons. One, the mother was not in Sutter's care or custody when she was injured. Two, Renwick failed to allege facts establishing malicious or reckless conduct. And three, Renwick failed to allege facts establishing that an officer,

10

director, or manager of Sutter authorized or ratified any reckless neglect, which is required for Renwick's request in her complaint for heightened remedies against Sutter.

A

*The Mother Was Not In Sutter's Custody Or Care When She Was Injured*

Renwick contends Sutter had a duty of care for her mother, imposed by statute, its own procedures and the facts here, as soon as it received the referral from Eskaton. We take each contention in turn, finding merit in none.

As to the statute, Renwick's position is that an administrative regulation relating to the implementation of internal procedures to handle medical emergencies created a duty of care here. Not so. The regulation is as follows: home health care providers are required to "establish[] and implement[]" administrative written policies and procedures that include "[a] plan to handle medical emergencies." (Cal. Code Regs., tit. 22, § 74721, subd. (c)(1).) The totality of Renwick's argument on this point is "[t]his statute, at least, created a duty of care that required the implementation of emergency procedures in this present case to ensure that the vital, life-preserving injections of Lovenox were administered by someone to [her mother]." Renwick cites no authority for the proposition that this statute created a duty in Sutter to care for her mother simply because the statute required written policies and procedures that include a plan to deal with medical emergencies. This statute simply does not address the fundamental question of whether Sutter had care or custody or even a duty of care for the mother.

As to Sutter's own procedures and the facts here, Renwick alleged Sutter had its own admission criteria and policy process that required it to perform the initial assessment within 48 hours of the referral, and if that time frame could not met, Sutter was required to inform the patient's physician, the referral source, and the patient for approval of the delay. If approval was not obtained, Sutter was required to refer the

11

patient to another agency for services. No "staff" at Sutter did any of this. Renwick also alleged that "according to the California Department of Health [i]nvestigation, the referral was accepted by [Sutter], contingent on insurance authorization." The problem here, of course, is that the contingency was never met because by Renwick's own allegation, it was "Kaiser [that] violated its duty to approve or disapprove the request [of] in home care by Sutter . . . including the necessary post-stabilization medical care which included the life preserving Loven[o]x injections."

B

*Renwick Has Failed To Allege Facts*

*Establishing Malicious Or Reckless Conduct On Sutter's Part*

As we have noted, the elder abuse alleged here required that the defendant "denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain . . . (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness)." (*Carter v. Prime Healthcare Paradise Valley LLC*, *supra*, 198 Cal.App.4th at pp. 406-407.) Thus, " 'a plaintiff must demonstrate . . . that defendant is guilty of something more than negligence; he or she must show reckless, oppressive, fraudulent, or malicious conduct.' " (*Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1518-1519.)

Renwick makes only one claim with respect to recklessness. She asserts that with respect to Sutter failing to comply with the statutory requirement to implement emergency procedures to ensure the mother was administered Lovenox, Sutter "recklessly neglected this duty of care." Renwick pled no facts to demonstrate recklessness, rather simply asserting the conduct was reckless, which was insufficient to survive sustaining Sutter's demurrer. (See *Carter v. Prime Healthcare Paradise Valley*

12

*LLC*, *supra*, 198 Cal.App.4th at p. 410 [to avoid the sustaining of a demurrer for an elder abuse cause of action, a plaintiff must plead facts that show the conduct was reckless, not simply assert that it was reckless]; *Moore v. Regents of University of California*, *supra*, 51 Cal.3d at p. 125 [when we review a ruling on a demurrer, we do not assume the truth of conclusions of fact or law, such as those contained in a plaintiff's pleadings].)

C

*Renwick Was Required To Allege Facts In The Complaint That*
*An Officer, Director, Or Manager Of Sutter Authorized Or Ratified*
*Any Alleged Reckless Neglect For Punitive Damages Liability Against Sutter*

The real crux of the dispute at the trial court and here on appeal with regard to Renwick's claims against Sutter was and is whether Renwick alleged facts sufficient to establish she was entitled to heightened remedies against Sutter. Specifically, the trial court did not reach the issue of whether Sutter had care or custody of the mother because it ruled that Renwick failed to plead with particularity that an officer, director, or managing agent authorized or ratified Sutter's failure to send a nurse or refer her to another facility.

This language comes from Renwick's request in her complaint for heightened remedies against Sutter under a statute imposing employer liability upon the acts of an employee if the employer "authorized or ratified the wrongful conduct." (Civ. Code, § 3294, subd. (b); see Welf. & Inst. Code, § 15657, subd. (c).) "With respect to a corporate employer, the . . . conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (Civ. Code, § 3294, subd. (b).) Renwick's complaint did not plead any managerial conduct or managerial authorization of the alleged reckless act of Sutter, namely, Sutter's failure to comply with the statutory requirement to implement

13

emergency procedures to ensure the mother was administered Lovenox.   According to Renwick, however, these "facts need only be proven at trial, not pled" and in any event, "[m]anagerial conduct is implied by the facts alleged in the present case."  (Bold text omitted.)  Not so as to either.

As to whether the facts establishing managerial conduct or managerial authorization of the alleged reckless act must be pled in the complaint, they must.  The elder abuse statute embodies the necessity of pleading the elemental facts prior to proving them with sworn evidence.  Specifically, the California Supreme Court had held that "[i]n order to obtain the [Elder Abuse] Act's heightened remedies, a plaintiff must *allege conduct* essentially equivalent to conduct that would support recovery of punitive damages.  (Compare Welf. & Inst. Code, § 15657 [requiring 'clear and convincing evidence that a defendant is liable for' elder abuse and 'has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse'] with Civ. Code, § 3294, subd. (a) [requiring 'clear and convincing evidence' that the defendant has been guilty of oppression, fraud, or malice].)"  (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 789, italics added.)  Moreover, the punitive damages statute itself, although expressly referring only to "prov[ing]" facts  (Civ. Code, § 3294, subd. (a)) requires a plaintiff also to plead in the complaint facts establishing an employer's liability for the conduct of its employees.  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 721-722.)  Specifically, in that case involving punitive damage allegations under the punitive damages statute itself, the California Supreme Court "independently review[ed] the proposed amended complaint and the evidence submitted in support of and in

14

opposition to the motion [to strike] to determine whether plaintiffs have stated and substantiated a legally sufficient punitive damages claim against the Hospital."[1] (*Ibid.*)

Here, Renwick not only failed to plead facts establishing managerial ratification of the failure to establish emergency medical procedures, she also failed to establish that such facts were implied in the complaint. The allegations in the complaint actually indicate the opposite, i.e., that Sutter management did establish procedures to be followed where there was a delay in getting access to a referred patient, but there was a question as to whether Sutter employees followed the internal procedure. Specifically, the complaint alleged that Sutter had its own admission criteria and policy process that required it to perform the initial assessment within 48 hours of the referral, and if that time frame could not met, Sutter was required to inform the patient's physician, the referral source, and the patient for approval of the delay. If approval was not obtained, Sutter was required to refer the patient to another agency for services. No "staff" at Sutter did any of this. Moreover, regarding Sutter's failure to take action upon Eskaton's faxing of referral papers, while this arguably may have constituted negligence by a Sutter staff member tasked with reviewing such papers, this error is not the same thing as managerial authorization to disregard a medical emergency under Sutter's control. Simply put, there is no allegation or implication in the complaint that any officer, director, or manager at Sutter knew of the potential danger to the mother and ignored it. Renwick has not stated she can amend her complaint to make these allegations (or the others that we have identified as deficient).

---

[1]    In that case, because punitive damages allegations did not constitute a cause of action, they were instead tested by a motion to strike, rather than a demurrer. (*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 164.)

## DISPOSITION

The judgment is affirmed.  Eskaton and Sutter shall recover their costs on appeal.
(Cal. Rules of Court, rule 8.278(a)(1).)

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Hull, J.

16